No. 7678.

JOHNSON v. WILEY.

SUPREME COURT.—*Bill of Exceptions.*—*Omission of Part of Evidence.*—Where a bill of exceptions affirmatively shows that it does not contain all the evidence, this court will not consider any question which requires for its full understanding and correct decision an examination of the entire evidence given on the trial, even though it contain the statement that "this was all the evidence given upon the trial of the cause."

SAME.—*Practice.*—It is always necessary for one who complains of the ruling of a trial court, to bring to the appellate court a record fully and clearly showing that there was error in the proceedings or judgment appealed from; but where the questions presented may be determined as well without the entire evidence as with it, this court will consider and decide them, although all the evidence is not in the record.

SAME.—In order to present a question upon the exclusion of testimony, where the evidence is not all contained in the bill of exceptions, it must affirmatively appear that the omitted evidence does not directly bear upon or affect the ruling excluding the testimony.

EVIDENCE.—*Cross-Examination.*—The cross-examination must be confined to the subject-matter of the original examination.

SAME.—*Witness.*—*Impeachment.*—*Collateral Matter.*—A collateral matter can not be inquired into for the purpose of impeaching a witness.

SAME.—*Motives.—Contradictory Statements Concerning.*—It is proper to show the motives or feelings of a witness, and it is competent, for the purpose of impeachment, to prove that he has, at a specified time and place, made statements showing that his impartiality is affected by motives arising from friendship, affection, fear or interest.

From the Ohio Circuit Court.

*A. C. Downey* and *H. S. Downey*, for appellant.
*O. B. Liddell* and *J. S. Jelley*, for appellee.

ELLIOTT, J.—The questions discussed in appellant's brief all arise upon the ruling denying his motion for a new trial.

It is strenuously insisted by appellee's counsel that the evidence is not all in the record, and that, therefore, none of the questions discussed are properly presented. The position of appellee, that, where the bill of exceptions affirmatively shows that all of the evidence is not incorporated, this court will not pass upon any question which requires for its full understanding and correct decision an examination of the entire evidence given upon the trial, is undoubtedly correct. This is so although the bill contains the usual statement that "this was all the evidence given upon the trial of the cause." *Powers* v. *Evans*, 72 Ind. 23 ; *Morrow* v. *The State*, 48 Ind. 432 ; *Miles* v. *Buchanan*, 36 Ind. 490 ; *Ward* v. *Bateman*, 34 Ind. 110 ; *The State, ex rel.*, v. *Swarts*, 9 Ind. 221. The record sustains the statement of counsel that the bill of exceptions does not contain all the evidence. In this condition of the record, we can not, under the settled rules of practice stated, consider any question which requires an examination of the entire evidence given in the cause.

There are questions arising upon a ruling denying a motion for a new trial which may be as well and fully considered without the entire evidence as with it. In such a case, the questions will receive consideration, although the bill of exceptions neither contains, nor professes to contain, all the evidence adduced upon the trial. The rule upon this subject is this : Where the questions may be determined as well with-

Johnson *v.* Wiley.

out the entire evidence as with it, this court will consider and
decide them, although all the evidence is not in the record.
*The Estate of Wells* v. *Wells*, 71 Ind. 509.   There are, of
course, very many cases in which the questions arising upon a
ruling denying a new trial can not be either intelligently un-
derstood or properly decided without an examination of all
the evidence, and in such cases all must be incorporated in
the record.   It is always necessary for one who complains of
the ruling of a trial court to bring to the appellate court such
a record as fully and clearly shows that there was an error
in the proceedings or judgment appealed from.

It is very clear that, with two exceptions, all the questions
discussed by counsel in the present case require for their
intelligent understanding and just consideration a full knowl-
edge of all the evidence given in the cause, and this knowl-
edge the record does not supply.   To the two questions
which can be fairly understood without the entire evidence,
we shall confine our discussion.   While we are clear that
there are not more than two questions properly before us, we
are not so clear that the record does present more than one.
The first of these questions arises upon the ruling excluding
testimony offered by the appellant.   The appellee argues
that we can not, without all the evidence before us, consider
the question whether testimony was or was not erroneously
excluded.   The broad proposition is made that it is, in all
cases, improper to consider the correctness of a ruling ex-
cluding evidence, unless the entire body of the evidence is
fully and properly in the record.   This proposition declares
an erroneous doctrine.   There are cases where the appellate
court may rightfully review a ruling excluding testimony,
without having all the evidence before it.   That this is so, a
few familiar illustrations will fully prove.   Take, for illus-
tration, an action upon a promissory note, where the sole
defence was payment; would it need all the evidence to
properly apprise the appellate court that the trial court erred.

in rejecting evidence of the payment of money to the plaintiff? Or, again, suppose the action to be upon an account for goods sold and delivered, the defence to be a set-off founded upon a promissory note executed by the plaintiff, and the only reply an unverified general denial; would it require all the evidence to make it appear upon appeal that the trial court did wrong in refusing to permit the note to be read in evidence? It is, however, unnecessary to multiply illustrations; it is obvious that there are many cases where it would be wholly useless to set forth the entire evidence; for all that is needed to fully inform the court of the character of the ruling is the record of the issues and the statement of the evidence offered, and a description of the time and manner in which the offer was made. It is not every case in which the appellate court can determine, without the entire evidence being in the record, whether there was or was not error in excluding evidence. Whether such a question can be properly considered and determined, in the absence of any part of the evidence, must be decided upon the record in the particular case. If the record is in such a condition as to fully and fairly show that an error was committed, then that question may be deemed to be properly presented, although some parts of the evidence be omitted from the record, provided it also affirmatively appears that the omitted evidence does not directly bear upon or affect the ruling excluding the proffered evidence.

In the case we are now considering, it does affirmatively appear that the omitted evidence does not at all affect the question whether there was or was not error in excluding the evidence offered by the appellant. The bill, as we have seen, affirmatively recites that it contains all the evidence, but also shows that this recital is not correct. The character of the omitted evidence is very clearly shown, and we can ascertain from a bare inspection of the record that nothing is omitted which in any wise affects the question arising upon

Johnson v. Wiley.

the ruling excluding the offered evidence. The condition of the record is, in short, such as to fully show that the omitted evidence is not at all essential to .a full and intelligent consideration of the question argued.

Appellee had called and examined a witness, and the appellant, upon cross-examination, propounded an interrogatory as to what conversation had occurred at a time and place named in his examination-in-chief, and the court refused to permit the question to be answered. The appellee had not asked the witness any question concerning the conversation called for by appellant's cross-examination, and the witness had not stated it. The appellant had no right, therefore, to elicit that conversation upon cross-examination, for it was not a matter brought out upon the examination-in-chief. It is well settled that a cross-examination must be confined to the subject-matter of the original examination. The question we are now speaking of is presented in two instances by the appellant, but there is no reason for a separate consideration, for the principle governing both is the same. The court refused to permit the appellant to ask questions for the purpose, as was claimed, of laying the foundation for an impeachment. The question which the appellant stated was, "Did not Fletcher Pate say to you that you had better accept the will, and did you not reply that the Wileys had threatened that, if you did not come here and testify, they would bring a suit on the note?" Time, place and person were properly designated in other interrogatories, and from the testimony previously given it very plainly appeared that the note referred to was that of the witness' husband.

The question for our decision is, whether the subject-matter of the interrogatory is collateral to the issues in the case ; for if it is, then, under the very old and very familiar rule, that a collateral matter can not be inquired into for the purpose of impeaching a witness, the court did right in refusing

to allow the interrogatory to be asked. It is well settled that it is proper to propound, upon cross-examination, interrogatories tending to ascertain the motives or influences which operate upon the mind of the witness. It is, indeed, one of the chief offices of a cross-examination to ascertain the bias or prejudice of a witness, whether arising from affection, hatred or self-interest.

In the present case, the credibility of the witness might have been affected by an admission that she was testifying under the influence of fear, produced by threats to involve her husband in litigation. One testifying under the influence of fear, or acting under the influence of a desire to shield a near relative from pecuniary loss, is not so likely to impartially and correctly state facts as the witness who goes upon the stand uninfluenced by any such motives, and whose only desire is to state fully the facts as he knows or believes them to exist. It is not, of course, for the trial court to decide to what extent such motives may influence the witness, nor to what extent, if at all, they may be deemed to affect the witness' credibility; those questions are exclusively for the jury. There is some conflict upon the question whether an impeachment by proof of previous contradictory statements can be founded upon matters relating to the motives or feelings of a witness. The earlier English cases held that such matters were not collateral, and that it was proper to impeach the witness by evidence of previous contradictory statements, but many of the later cases declare a different doctrine. An English author, commenting upon these cases, says: "Such being the conflict of authorities, it is no easy matter to apply the rule with precision to any new combination of facts; but probably a sensible lawyer, who was really anxious to promote the interests of truth and justice, would on most occasions feel inclined to follow the former, rather than the latter, class of cases. Indeed this view of the law is strongly confirmed by a case

Johnson *v.* Wiley.

in the Exchequer, where the learned barons intimated a tolerably decisive opinion, that a witness might be asked any *questions* tending to *impeach his impartiality*, and that his answers might be contradicted by other witnesses.'' Taylor's Evidence, sec. 1298.    Our leading American text-writers approve and declare the doctrine sanctioned by the English author quoted.    1 Greenleaf Evidence, sec. 450 ; Wharton Evidence, secs. 408, 561.

The general principle here involved received the approval of this court in the case of *Scott* v. *The State*, 64 Ind. 400, in which it was held that where a witness on cross-examination denies having made a statement indicating hostility to the cross-examining party, he may be contradicted. It can make no difference whether the motives arise from hatred, interest or affection, the principle is the same.    If it be proper to contradict a witness, by proving that statements have been made indicating hostility and enmity, it surely must be competent to prove statements showing that the impartiality of the witness is affected by motives arising from friendship, affection, fear or interest.    The character of the motive can make no difference in the application of the legal principle which permits motives to be made the subject of inquiry.    Evidence showing the motives of a witness can not be deemed to be collateral in such a sense as to require a denial of the right to impeach by evidence of previous contradictory statements.

The only other question properly in the record grows out of the refusal of the court to submit to the jury an interrogatory propounded by the appellant; but, as the judgment must be reversed because of the error in excluding evidence, it is unnecessary to consider the questions arising upon this ruling.

Judgment reversed, at costs of appellee.