No. 11,215.

## HYLAND v. MILNER ET AL.

WITNESS.—*Cross-Examination.*—*Practice.*—On cross-examination a witness may be required to state particulars and details relative to material matters which he has stated generally, in chief, and it is error to refuse this right; and it is not necessary to inform the court of the facts expected to be developed by any such question.

SAME.—On cross-examination, acts of the witness, relevant to the subject-matter of the action, and inconsistent with his testimony, may be shown as affecting his credibility.

HUSBAND AND WIFE.—*Trust and Trustee.*—*Conversations.*—*Evidence.*—In a suit by a widow against a purchaser of lands upon execution against her deceased husband, in which she claims that her husband held the lands in trust for her, she can not testify to conversations with him during life touching the matter.

From the Spencer Circuit Court.

*C. L. Wedding* and *E. M. Swan,* for appellant.

*C. A. DeBruler,* for appellees.

ELLIOTT, J.—This case is here for the second time. The pleadings and the rulings made in the formation of the issues are fully reported in *Milner* v. *Hyland,* 77 Ind. 458. The principle declared in that case is, that a purchaser at a sheriff's sale, although the sale is made on his own judgment, will hold the land as against the claim of a wife who had furnished the money with which to buy the land, but had permitted the husband to take and hold the title in his own name. It is, however, necessarily implied that the purchase must be made without knowledge of the equities of the wife who furnished the money which paid for the property. The doctrine laid down in the opinion on the former appeal has received the sanction of the court in many cases decided since that decision was rendered. *McMillan* v. *Hadley,* 78 Ind. 590; *Westerfield* v. *Kimmer,* 82 Ind. 365; *Sansberry* v. *Lord,* 82 Ind. 521; *Heck* v. *Fink,* 85 Ind. 6, see p. 9; *Paulus* v. *Latta,* 93 Ind. 34. The questions presented by this appeal arise on the ruling denying a new trial.

On the trial of the cause the appellant introduced evidence

showing that she furnished to her husband the money with which the land in controversy was purchased, and there was also evidence fully warranting the inference of an agreement on the part of the husband to hold the land for the benefit of the wife. The appellant admitted that the judgments against her husband had been rendered as claimed by the appellees; that executions had been issued and levied, and that a sale of the land had been duly made and a deed issued to the appellees, who purchased at the sale. Robert T. Kercheval was introduced as a witness on the part of the defence, and testified that he was a member of the Rockport Banking Company at the time of the transaction in which the debt of the appellant's husband was contracted; that he bid off the property for the partnership of which he was a member, and that he had no notice whatever of the claim of the appellant. Isaac L. Milner, another member of the partnership, gave similar testimony, and the defence then rested. Mrs. Hyland was called in her own behalf, and testified, among other things, that she told Mr. Bullock, a member of the Rockport Banking Company, shortly after her husband's death in November, 1874, that the land was her property, and had been paid for with her money. She also testified that Bullock replied that her husband had told him that the property belonged to her. After the close of the evidence offered in reply, the appellees recalled Mr. Kercheval, who testified, on his direct examination, as follows: "The first organization of the Rockport Banking Company ceased by limitation on the last day of December, 1874, and it was re-organized on January 1st, 1875. George B. Bullock did not go into the new firm, so his connection with it ceased on December 31st, 1874. I don't think he was a member afterwards, but his money remained there and assets and claims standing out, the full amount due him on dissolution being ascertained and set apart for him in cash. He subsequently took it away. He had no interest in the uncollected assets." The appellant, as the first question on cross-examination, asked the witness: "If it was

not a fact that George B. Bullock had not withdrawn his assets from the company, and that he still retained his interest after the first day of January, 1875, in the assets and property of the firm of which the judgment against James Hyland was a part, which had not been fully settled." We think the question was a proper one on cross-examination. It was competent for the appellant's counsel to enter into the details of the subject-matter opened up by the examination in chief, and they were not restricted to the statements made in general terms by the witness in his answers to the questions asked on the direct examination. They had a right to demand, within reasonable limits, details and particulars, and were not to be put off with mere general statements. A cross-examination is important not only as a means of getting out in full detail all the facts within the range of the subject-matter of the direct examination, but it is also an important means of testing the memory of a witness, as well as a potent means of ascertaining the truth of his statements. It is very clear that the trial court erred in denying the appellant the right to ask the question submitted by her counsel.

It is not necessary on cross-examination to state what facts it is expected the answer will elicit; on the direct examination this is essential, but not on the cross-examination. *Wood* v. *State*, 92 Ind. 269; *Harness* v. *State, ex rel.*, 57 Ind. 1. All that it was necessary for the appellant to do was to ask a material question in a proper manner, and if the question was material and competent on cross-examination, the error in excluding it is sufficiently shown, without making a statement of what facts the examining counsel expected to prove.

In this instance the interrogatory bore upon one of the most material points in the case, for the question whether the purchasers had notice of Mrs. Hyland's claim was one of vital importance. The interrogatory was fully within the subject-matter of the direct examination, and the error in denying the right to propound it to the witness is plainly exhibited.

It is, however, contended that if there was error in refusing

to allow the appellant to secure an answer to the interrogatory propounded to Kercheval, it was rendered harmless by the fact that the witness subsequently voluntarily made this statement: "G. B. Bullock did not immediately withdraw the money due him on dissolution of the firm on December 31st, 1874; I put the money for him in an envelope and put it away in the safe at the office of the bank, and he got it afterwards." We do not regard this statement as curing the error, for it does not embrace all the matters called for by the interrogatory, so that even conceding, but by no means deciding, that an error in restricting a cross-examination can be cured by a statement of the witness, still, the error in this particular instance was not rendered harmless. But we do not think that it is possible to escape the consequences of such an erroneous ruling upon the ground that the statement called for by the question has already been made in general terms, for one of the great purposes of a cross-examination is to get at the correctness of the statements made on the direct examination, and it would frustrate this purpose if the cross-examiner could be put off upon the ground that the witness had already made the statement which the interrogatory would likely elicit. It would be cold comfort to a cross-examiner to be denied a right, and then have the denial justified on the ground that a general statement was made by the witness which covered the whole subject. This would be bad enough in any case, but especially bad where, as here, the witness is one of the adverse parties.

The appellant introduced Wilmer Hyland as a witness, who testified that the money with which the property was purchased belonged to her, and also to facts tending to show an agreement with the husband to hold the property for her. On cross-examination he was asked if he did not bid at the sheriff's sale. We regard as correct the ruling permitting the appellees to ask this question. As the real estate was levied upon and offered for sale as the property of the appellant's husband, and as the witness in bidding impliedly recognized the

property as the husband's, the question was likely to, and in fact did, elicit an answer affecting the credibility of the witness. It is always proper on cross-examination to show that the witness has said, or has done, things inconsistent with his statements on the witness stand. It is to be noted, however, that his acts or declarations must always be connected with the subject-matter of the action, for purely collateral matters can not be enquired into. In this case the matter was closely relevant to the subject of the action.

There was no error in refusing to permit Mrs. Hyland to testify as to conversations held with her husband prior to his death, and prior to the time the rights of the appellees accrued. R. S. 1881, section 499.

For the error in erroneously restricting the cross-examination the judgment must be reversed.

Filed Jan. 2, 1885.