Bedgood *et al. v.* The State.

|115 275|
|.124 198|
|126 188|

No. 14,435.

## BEDGOOD ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Rape.*— *Previous Intercourse With Accused.*— *Evidence.*— Where several persons are on trial for rape, the prosecuting witness may be required to answer a question propounded on cross-examination as to whether she had not, a short time before the crime was alleged to have been committed, voluntarily had sexual intercourse with one accused by her with the defendants, and indicted with them, but as to whom the prosecution had been dismissed.

SAME.— *Witness.*—*Self-Crimination.*—In such case the witness can not refuse to answer on the ground that her testimony might criminate her, for even if it so tended, the statute (R. S. 1881, section 1800) prohibits testimony given under such circumstances from being used in any prosecution against the witness.

SAME.—*Cross-Examination.*— The right to cross-examine can not be restricted to mere general statements, but there is a right to interrogate as to particulars and details.

From the Bartholomew Circuit Court.

*F. T. Hord* and *M. D. Emig,* for appellants.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for the State.

ELLIOTT, J.—Bedgood, Hill and Bozell, the appellants, were convicted of the crime of rape. With them were indicted Henry Shumway, and Andrew Gaston. A *nolle* was entered as to Shumway and Gaston was acquitted.

Ardelle Tilford, the woman upon whom it is alleged the rape was committed, gives substantially this account of herself and of the crime charged against the appellants: She was a married woman, twenty-one years of age, and lived with her husband in the village of Jonesville. There were inhabited houses not far from the house in which she lived. On the night of the 7th day of January, 1888, the persons accused of the crime came to the house and forced open the door. Two of them, Gaston and Bedgood, seized her and placed their hands over her mouth. They told her that if

she cried out they would kill her, and that if she told her husband they would kill him and kill her. When they entered the house she was in her night-clothes; they told her she might put on her clothes, and, as she says, they helped her "put on a loose Mother Hubbard dress." They took her into the back room, Gaston and Bedgood having hold of her and the others following, but they could not all get into that room because of its size. She was held by some of the accused during the whole time, having been first thrown on a bed, and each one of them violated her person. They repeated their threats and she made no outcry because, as she says, she feared to do so, and because some one of the men held his hand over her mouth. After they had accomplished their purpose, they left the house but returned within five minutes and remained a short time, again violating her person. After they had violated her person the second time, Gaston attempted to fix the door fastening and some of the others went to her trunk. After they left, she went to the house of John Lewis and informed him or his family that some one had broken into the house, but she did not make complaint of any one of the accused until the Monday after the occurrence. The reason she did not inform her husband or any one else sooner was, because she feared that the accused persons would kill her and kill him. On Sunday morning she told Mrs. Lewis and others that the persons who had broken into the house had not injured her and had not put their hands upon her, and she made substantially the same statement to Mr. Lewis and perhaps others.

This is substantially her testimony as elicited by the direct examination. John Q. A. Lewis was called by the State, and he testified that on Saturday night, January 7th, 1888, about ten o'clock, Mrs. Tilford came to his house and asked that some one come to her house, but made no complaint that any outrage had been committed upon her person. Mr. Tilford, the husband of Ardelle Tilford, as a witness for the prosecution, testified that no complaint was made by his wife

of the alleged crime on Saturday night, but that complaint was made by her on Monday night. He also testified that she was weeping during Monday.

W. H. Meyers testified that he saw her on Monday morning, and that she was then somewhat excited, and he also testified that he saw some marks on her face. These were all the witnesses called by the State, except such as were called upon the question of character.

Gaston adduced very strong evidence of an *alibi*, and on that ground was acquitted, although Mrs. Tilford testified quite as positively to his presence as to that of any one else, and, indeed, testified that he took a rather more active part in the affair than any of the others.

Shumway testified that he was not at Mrs. Tilford's house after seven or eight o'clock, that Bedgood and Gaston came in as he went out, and that no personal violence was inflicted upon her. Shumway was corroborated by Wagoner, Wright and other witnesses.

Miss Lewis testified that when Mrs. Tilford came to her father's house on the night of January 7th there were no marks of violence on her person, that her clothes were not torn, that she said six or seven men had broken into her house, but she did not know who they were, and that she made no complaint of an outrage on her person. Mrs. Lewis gave substantially the same testimony.

Mrs. King, to whom Mrs. Tilford says she made complaint on Monday, testified that no complaint was made by Mrs. Tilford of an outrage on her person, but that she did say that six or seven men, none of whom were known to her, had broken into her house and taken things out of her trunk and scattered them about. This witness also testified that there were no marks of violence on Mrs. Tilford's face.

The accused persons all denied that they had used any violence or threats, but some of them admitted that they did, at different times during the early part of the evening of

January 7th, have sexual intercourse with Ardelle Tilford with her consent.

In many particulars the evidence of the accused was corroborated, and in many that of Mrs. Tilford was contradicted by them and by other witnesses. A number of witnesses testified that Mrs. Tilford's general reputation was bad, and others testified that it was good.

It is not our purpose to decide the case upon the evidence, and we have given a synopsis of the evidence for no such purpose; our purpose is to show that the evidence is not of that satisfactory character which will enable us to say that the verdict is so clearly right that we can rightfully disregard errors committed in excluding testimony. We are, indeed, strongly impressed with the argument that the verdict is wrong on the evidence.

The character of the case and of the evidence was, at all events, such as to entitle the appellants to the benefit of all the testimony they could adduce, and if any legitimate evidence has been excluded there must be a reversal. The evidence of the State is, at least, not of that strong and satisfactory character which would justify us in adopting the theory that the verdict is so clearly right that errors may be disregarded.

The appellants asked Mrs. Tilford, on cross-examination, whether she had not, a short time before the crime was alleged to have been committed, voluntarily submitted to the embraces of Henry Shumway. The trial court refused to require the witness to answer. The legal question is presented in various forms, but it is not necessary that we should do more than state it generally.

If the prosecution had not dismissed as to Shumway, it is quite clear, upon principle and authority, that the appellants might, as of right, have required Mrs. Tilford to answer the questions propounded to her. The law upon this subject is thus stated in a recent work: "But previous acts of incontinence with the defendant stand on a different ground, and

.are fairly comprehended within the *res gestœ* of the inquiry; .and within the same principle evidence is competent of the woman's lewd and indecent behavior towards the defendant." ·Gillett Crim. Law, section 733. The authorities support this proposition. *Eyler* v. *State,* 71 Ind. 49; *Anderson* v. *State,* 104 Ind. 467; *Rex* v. *Martin,* 6 C. &. P. 562; *State* v. *Forshner,* 43 N. H. 89; *State* v. *Cook,* 22 N. W. Rep. 675; *People* v. *Abbot,* 19 Wend. 192; *Shirwin* v. *People,* 69 Ill. .55; *State* v. *Jefferson,* 6 Iredell, 305; *Hall* v. *People,* 47 Mich. 636; *Wilson* v. *State,* 17 Texas App. 525; 1 Wharton Crim. Law (9th ed.), section 568.

The principle upon which these authorities proceed is that ·evidence of previous illicit commerce renders it probable that force was not used. This principle has a two-fold effect, inasmuch as it affects the credit of the woman who charges that her person was forcibly violated, and, also, supplies the accused with a circumstance making it probable that he did not obtain by violence what he might have secured by per- .suasion or for money. It is, the rule assumes, not probable that a man who has procured without committing a felony what he desires, would commit a felony to obtain it. A man .accused of crime has a right to all relevant testimony that tends to make it appear improbable that he is guilty of the ·crime with which he is charged.

" Like reason," it was said of old, " doth make like law." The like reason extends the rule declared by the authorities to this case. If it be true that Shumway did have sexual intercourse with Mrs. Tilford with her consent, then it is not. probable that he would have joined other men in forcing her to submit to his embraces. If this is not probable, then it is not probable that such an occurrence took place as Mrs. Tilford testified to on the night of January 7th, 1888; for, if it is probable that he was not with the appellants on that night, or that he did not unite with them in a felony, it is fairly inferable that the story told by Mrs. Tilford is not worthy of belief. We do not, of course, decide what weight

should be given the evidence; all that it is necessary or proper for us to decide is, that the evidence sought to be elicited was relevant and competent.    Where evidence is competent and relevant, it is the duty of the court to receive it, leaving it for the jury to determine its weight.    *Pedigo* v. *Grimes,* 113 Ind. 148, and cases cited; *Grand Rapids, etc., R. R. Co.* v. *Diller,* 110 Ind. 223, and cases cited; *Harbor* v. *Morgan,* 4 Ind. 158.

The fact sought to be brought out on cross-examination, it is obvious from what he have said, affected all the persons accused, for, if it was improbable that Shumway would have resorted to violence, it is also 'improbable that he was one of several who did, and if he was not, then the occurrence did not take place as Mrs. Tilford describes it.    By dismissing the case as to Shumway, the prosecution could not take from the appellants evidence that was favorable to them.

Mrs. Tilford was not entitled to refuse to answer upon the ground that the answer might criminate her.    If she had admitted that she did have sexual intercourse with Shumway on the night of January 7th, 1888, it would not, it seems, have tended to prove her guilty of any crime, for the law does not make a single act of sexual intercourse a criminal offence.    Gillett Crim. Law, section 192.    But waiving a decision and conceding that the answer might tend to criminate her, still she could not as of right refuse to answer, because the statute prohibits testimony given under such circumstances from being used against an accused.    R. S. 1881, section 1800; *Wilkins* v. *Malone,* 14 Ind. 153; *Frazee* v. *State,* 58 Ind. 8; *LaFontaine* v. *Southern, etc., Ass'n,* 83 N. C. 132; *State* v. *Nowell,* 58 N. H. 314; *United States* v. *McCarthy,* 16 Rep. 388; *State* v. *Quarles,* 13 Ark. 307.

If the statute did not fully shield the witness the rule would be different, but here the shield completely protects the witness.    *State* v. *Enochs,* 69 Ind. 314.

We can not agree with the attorney general that, because

Shumway was permitted to testify that he did have previous sexual intercourse with Mrs. Tilford, the error in denying the right to compel Mrs. Tilford to answer was a harmless one. Nor can we agree that, because Mrs. Tilford denied in general terms that Shumway was at her house early in the evening of January 7th, the error was rendered harmless. The right of cross-examination would be valueless if restricted to mere general statements, and it is uniformly held that it can not be thus restricted. Where there is a right to cross-examine, there is a right to interrogate as to particulars and details. *Hyland* v. *Milner*, 99 Ind. 308, 311; 1 Greenleaf Ev., section 446. But in this instance the fact inquired about was material in a very high degree, and was a fact affecting the credibility of the witness, as well as one going to one of the essential elements of the crime charged against the accused. 1 Wharton Ev. (3d ed.), section 542.

Other questions are discussed by counsel, but as the judgment must be reversed, and the questions discussed may not again arise, we do not deem it necessary to examine them.

Judgment reversed, with instructions to sustain the appellants' motion for a new trial.

Filed June 20, 1888.