LAVENGOOD *v.* LAVENGOOD, ET AL.

[No. 28,328.   Filed June 20, 1947.]

208

*Kenner, Carlson & Gordon,* of Huntington, for appellant.

*Campbell, Gemmill, Browne, Jr. & Ewer* and *Edward E. Hayes,* all of Marion, for appellees.

GILKISON, J.—Appellant brought this action to contest the will of Daniel C. Lavengood. A trial by jury resulted in a verdict and judgment for defendants, and from this judgment the appeal is taken.

Among the questions properly presented are (1) that the court erred in refusing to give the jury instructions 1 and 10 tendered by appellant, and (2) in sustaining an objection to a question propounded by appellant to the executor, the chief beneficiary, on cross-examination. We shall consider these questions in regular order.

The complaint charges that the will was executed while the testator was of unsound mind; that the will was unduly executed; that it was executed under duress; and that it was obtained by fraud. Thus, each of the statutory causes for contest is contained in the complaint, including undue influence, § 7-504, Burns' 1933.

On the subject of undue influence, June Offinger, the divorced wife of the testator, who was married to him on July 18, 1942, and lived with him until January 1943, testified in substance as follows:

> My father visited me in October. After he left Walter Lavengood was there. I heard D. C. Lavengood say to Walter that June wanted to take him for a ride and he was afraid she would kill him. Walter said be sure and don't go riding with her.
> In November, 1942, I heard a conversation between D. C. Lavengood and Walter Lavengood, D. C. Lavengood said it was hard not to like June and Walter said you can be civil but you can't be social, D. C. Lavengood said what do you mean, and Walter said answer questions if she asks them but don't talk to her otherwise, don't play any cards

with her. I heard a further conversation between Walter Lavengood and D. C. Lavengood in which D. C. said he would have to pay a lot of alimony and Walter said there wouldn't be a question of alimony, and to make a settlement. D. C. wanted to know if she would take a settlement and Walter said she would have to, that the court would make her; D. C. said he was afraid she would sue and Walter said let her sue. I was there when Walter came out and made entries in books and signed papers relative to pedigreed cattle. I offered to help him to find out what it was all about and he just laughed at me. D. C. took no part; he did nothing.

I went with D. C. Lavengood out to Walter Lavengood's home. D. C. told Walter he had an offer, somebody wanted to buy the Swayzee farm and Walter said don't sell it, that it was the best income he got and that it was worth a lot more than that. He did not sell the farm while I lived with him. I asked him once about the income from his farms, how many pigs he had and how many cattle, and he said he didn't know, he said he was paying Walter to look after it.

And there are other facts in evidence from which inferences of undue influence might arise.

It was therefore proper to give appropriate instructions on the subject of undue influence.

Instruction 1 tendered by plaintiff and refused by the court is as follows:

"The court instructs you in order that a will may be considered as valid, the same must be signed by the testator, or by some one for him in his or her presence, and with his or her consent, and attested and subscribed in his or her presence by two or more competent witnesses, and that at the time of the execution of said will, the said person so making said will should be of lawful age, and of sound mind and free from any duress or restraint or any undue influence, such as would prevent him or her from exercising his or her free

will and wishes, with reference to the disposition of his or her property."

Instruction 10 tendered by plaintiff and refused by the court is as follows:

"I instruct you that in this case it becomes your duty to say whether the alleged will and codicil of Daniel C. Lavengood which has been introduced in evidence was executed while under undue influence. In this regard I instruct you that it is your duty to consider not only the positive testimony of the witnesses, if any, in this respect, but also such inferences as flow naturally from such established facts. I instruct you that the exercise of undue influence may be shown by circumstantial evidence, and the provisions of the will and the circumstances attending its execution may be considered in this respect, along with all other competent evidence in this respect as stated by these instructions.

"I further instruct you in this regard that while it is true, as stated in these instructions, that undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it is made. It is also the law, and I so instruct you, that it is not necessary, in order to vitiate a will because of undue influence, that the one having the influence over another should be actually present and exercising it at the time and place of the preparation and execution of the will. If an undue influence previously acquired still persists at the time of the execution of the will, so that but for it the will would have been different from that actually executed, then if you so find, such undue influence will vitiate said will."

A party who makes a proper request is entitled to have an instruction based upon his own theory of the case if within the issues and there is any evidence fairly tending to support it. *Carpenter* v. *State* (1873), 43 Ind. 371; *Malone* v. *State* (1911), 176 Ind. 338, 345, 96 N. E. 1; *Henry* v. *Epstein* (1911), 50 Ind. App. 660, 669, 95 N. E. 275; *Southern Indiana*

*Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 491, 97 N. E. 580; *Woolery, Admr.* v. *The Louisville, N. A. & C. Ry. Co.* (1886), 107 Ind. 381, 386, 387, 8 N. E. 226; *Taggart* v. *Keebler* (1926), 198 Ind. 633, 642, 154 N. E. 485.

There can be no doubt that appellant's tendered instructions Nos. 1 and 10 were fairly within the issue of undue influence tendered by the complaint, ▄▄▄ and that there was some evidence tending to support that issue. It was error to refuse them. Neither this court nor the trial court may weigh the evidence to determine whether the tendered instructions should or should not be given. We are required only to determine whether or not there was any evidence fairly tending to support the issue. Having determined that question in the affirmative our duty is clear.

But it is contended that since the trial court by its own instruction 2, withdrew the issue of undue influence from the consideration of the jury, without ▄▄▄ objection by the plaintiff, that his failure to object constituted a waiver of the alleged error in refusing to give plaintiff's tendered instructions 1 and 10. This contention leads to a consideration of what constitutes a waiver. It has been held that a waiver is a voluntary yielding of some existing right. *Bucklen* v. *Johnson* (1898), 19 Ind. App. 406, 420, 49 N. E. 612; *Shedd* v. *American Credit, Etc., Co.* (1911), 48 Ind. App. 23, 28, 29, 95 N. E. 316; *Barnard Rec.* v. *Megorden* (1931), 94 Ind. App. 391, 394, 178 N. E. 868; *Russell* v. *Trustees of Purdue University* (1931), 93 Ind. App. 242, 254, 178 N. E. 180; *Shelt* v. *Baker* (1922), 79 Ind. App. 606, 616, 137 N. E. 74, 138 N. E. 93; *Sovereign Camp, Woodmen of the World* v. *Newsom* (1920), 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903, 919. And that mere silence on the part of a party is

not a waiver unless it is his duty to speak. *Barnard Rec.* v. *Megorden, supra; Aetna Insurance Co.* v. *Jones* (1917), 64 Ind. App. 251, 115 N. E. 697; *The Continental Insurance Company* v. *Dorman* (1890), 125 Ind. 189, 198, 25 N. E. 213.

Waiver contemplates something done designedly or knowingly which modifies or changes existing rights.

It presupposes full knowledge of a right existing ■ and an intentional surrender and relinquishment of that right. *Sovereign Camp, Woodmen of the World* v. *Newsom, supra.*

In the case at bar the plaintiff, at the proper time, tendered his instructions 1 and 10 applying to undue influence. He did not withdraw them. They ■ were refused by the court. In his motion for new trial plaintiff charged separate error of the court in failing to give each of these instructions, and the overruling of the motion for new trial is assigned as error in this court. It thus appears that on all proper occasions appellant has affirmatively asserted his right to have each of the instructions given. This constant action on his part is wholly inconsistent with the theory of a waiver. He did not object to the court's instruction 2, in the manner provided by Rule 1-7 of this court. As to it he merely remained silent, but he did not yield in asserting his right to have his instructions 1 and 10 given. This action on his part was notice to the court, and to appellees that he was not waiving his claim of a right to have these instructions given. We think his failure to object to the giving of the court's instruction 2, under the circumstances prevailing, can not be considered a waiver of his right to have his instructions 1 and 10 given; and that it was error to refuse them. *Pittman-Rice Coal Co.* v.

*Hansen* (1947), 117 Ind. App. 508, 72 N. E. (2d) 364, 367, 368.

When the executor, who was the chief beneficiary named in the will was on the witness stand in his own behalf, he was asked on cross-examination by appellant's attorney, the following question: "Want to ask you whether or not on the 11th day of November, 1944, you as executor didn't file in the Grant Circuit Court a report of sale of the Swayzee Farm to yourself and your wife in the sum of $41,887.40?" The court sustained defendant's objection to this question, and this action of the court is properly brought forward for review.

Appellees contend that the extent of the cross-examination of this witness was entirely within the discretion of the trial court, and that it was not an abuse of discretion to "refuse to permit the witness, Walter Lavengood, to testify concerning the sale and purchase of a farm formerly belonging to decedent in connection with the settlement of decedent's estate."

A general rule applicable to the cross-examination of a witness, has been stated as follows:

"The intent or motive of a witness is a legitimate subject of inquiry. Thus the motive of a witness to speak the truth or swear a falsehood should be considered. So the fact that a witness is influenced by financial considerations or is induced to testify by an offer of leniency in punishment affects his credibility."

70 C. J. *Witnesses* § 921, p. 762, 763; *City of South Bend* v. *Hardy* (1884), 98 Ind. 577, 49 Am. Rep. 792; *Kell* v. *State* (1924), 194 Ind. 374, 376, 377, 142 N. E. 865; *Pierson* v. *State* (1919), 188 Ind. 239, 243, 244, 245, 123 N. E. 118.

■ Our court has frequently held that,

"Any fact tending to impair the credibility of the witness by showing his interest, bias, ignorance, motives, or that he is depraved in character, may be shown in cross-examination, but the extent to which such cross-examination may be carried is within the sound discretion of the court."

*City of South Bend* v. *Hardy, supra. Parker* v. *The State* (1894), 136 Ind. 284, 35 N. E. 1105; *Bessette* v. *The State* (1885), 101 Ind. 85; *Blough* v. *Parry* (1896), 144 Ind. 463, 479, 480, 481, 482, 40 N. E. 70, 43 N. E. 560; *Spencer* v. *Robbins* (1886), 106 Ind. 580, 585, 586, 5 N. E. 726; *Houk* v. *Branson* (1896), 17 Ind. App. 119, 122, 45 N. E. 78; *Hinchcliffe* v. *Koontz* (1889), 121 Ind. 422, 425, 23 N. E. 271; § 2-1725, Burns' 1946 Replacement.

The cross-examination of a party for the purpose of discrediting his evidence is governed by the same rules as govern the cross-examination of any other ■ witness. *Keyes* v. *The State* (1889), 122 Ind. 527, 531, 23 N. E. 1097; *Houk* v. *Branson, supra. Tosser* v. *State* (1928), 200 Ind. 156, 160, 162 N. E. 49.

"The general rule of law is, that when a witness is cross-examined on matters collateral to the issues, his answer can not be subsequently contradicted by the party putting the question. . . . This rule, however, has no application where it is sought to show that the witness has an interest in the case, or that he is hostile to one of the parties to the suit, and if, on such cross-examination, the witness denies such hostility he may be contradicted by his own statements or acts. *Scott* v. *State,* 64 Ind. 400; *Johnson* v. *Wiley,* 74 Ind. 233; *Stone* v. *State ex rel.,* 97 Ind. 345; Wharton Crim. Ev. Sec. 484; Roscoe Crim. Ev. 102; *Newton* v. *Harris,* 6 N. Y. 345."

*Staser* v. *Hogan* (1889), 120 Ind. 207, 220, 21 N. E. 911. *Johnson* v. *Wiley* (1881), 74 Ind. 233, 237,

238, 239. *Scott* v. *State* (1878), 64 Ind. 400, 401, 402.

It was proper for appellant to ask specific questions on cross-examination of the witness, tending to show his interest in the controversy, and his actions ▆ with respect to his trust. Appellant had a right to demand, within reasonable limits, details and particulars, and was not to be put off with mere general statements. "A cross-examination is important not only as a means of getting out in full detail all the facts within the range of the subject matter of the direct examination, but it is also an important means of testing the memory of a witness, as well as a potent means of ascertaining the truth of his statements." *Hyland* v. *Milner* (1885), 99 Ind. 308, 310; *Boyle* v. *State* (1886), 105 Ind. 469, 474, 475, 5 N. E. 203; *Bedgood* v. *State* (1888), 115 Ind. 275, 278, 280, 17 N. E. 621. We think it was error to sustain the objection to the question.

We recognize fully that the extent of the cross-examination of a witness on any particular subject is within the sound discretion of the trial court. ▆ However, we do not believe this discretion may be exercised to prevent wholly the cross-examination of a party concerning facts connected with his own acts and statements relating to the case, and tending to impair his credibility, or show his interest, bias or motives. The court may, in the exercise of a sound discretion, limit such cross-examination, but he may not deny it. To do so is an abuse of discretion, requiring the reversal of a case. *Hyland* v. *Milner, supra. Bedgood* v. *State, supra.*

Other questions are presented but since the cause must be reversed for the two errors noted, it is unnecessary to decide them, as they may not occur in another trial.

The judgment of the lower court is reversed with instructions to sustain the motion for new trial.

O'Malley, C. J., not participating.

NOTE.—Reported in 73 N. E. (2d) 685.