Michael THOMBLESON, Appellant (Plaintiff Below),

v.

BOARD OF SCHOOL TRUSTEES OF CENTRAL SCHOOL DISTRICT OF GREENE COUNTY, Indiana, Appellee (Defendant Below).

No. 4–1084A294.

Court of Appeals of Indiana, Fourth District.

May 8, 1986.

Rehearing Denied June 13, 1986.

Richard J. Darko, Bradley W. Skolnik, Bayh, Tabbert & Capehart, Indianapolis, for appellant.

Robert E. Cambridge, Bloomington, for appellee.

MILLER, Judge.

Michael Thombleson appeals his dismissal as a nonpermanent teacher in the Central School District of Greene County. He alleges his dismissal was in violation of the collective bargaining agreement and the Teacher Tenure Act. We affirm.

## FACTS

Thombleson was a first year nonpermanent teacher in the Central School District of Greene County. Paul R. Chambers, the high school principal for the school district, kept notes on conferences and discussions he had with Thombleson. These notes reflect that on at least six separate occasions, Chambers discussed Thombleson's classroom discipline problem with him. Two written evaluations by Chambers stated Thombleson failed to meet school standards on discipline. Moreover, a written evaluation by Superintendent Sharon Knoll stated Thombleson was deficient in, among other things, classroom discipline. Finally in a letter dated April 14, 1982, Knoll informed Thombleson his teaching contract would be considered for nonrenewal on May 20, 1982 at a meeting of the Board of School Trustees.

On April 16, 1982, Thombleson exercised his statutory right and timely requested a written statement of the reasons for the nonrenewal of his nonpermanent teacher's contract,[1] and Knoll complied with this request in a letter dated April 19, 1982. Thombleson's letter also requested that a hearing be held on the recommendation that his nonpermanent teacher's contract should be terminated. This latter request was premised upon a fair hearing provision in Article VI, Part B of the collective bargaining agreement entered into by the Central School District and the Central Education Association of which Thombleson was a member. This portion of the agreement provided for a "fair hearing opportunity" in teacher contract terminations, and specifically stated:

"*Due Process.* A teacher whose contract is to be terminated shall be given a writ-

---

1. IND.CODE 20–6.1–4–14(b) provides, in part:
   "A teacher who is refused continuation of the contract under subsection (a) of this section has the following rights:
   (1) Upon the request of the teacher, and within fifteen (15) days of the receipt of the notice of contract non-renewal the governing body or the superintendent of the school corporation shall provide the teacher with a written statement which may be developed in an executive session and which is not a public document, giving the reasons for the non-continuation of the teacher's contract."

ten preliminary notice by the Superintendent of intention to terminate said teacher's contract prior to April 18.

The Board agrees that any teacher whose contract is to be terminated or not renewed shall be provided a fair hearing opportunity before the Board votes on the question of termination or non-renewal of said teacher's contract. Such hearing shall be during Executive Session and shall be between the teacher and the Board."

Record, pp. 281, 305.

The School Board later discovered it had erred in scheduling the final consideration of Thombleson's contract nonrenewal for May 20, 1982, when Chambers and Knoll were informed by counsel with the Indiana School Boards Association that nonpermanent teachers must be informed of contract nonrenewal by May 1.[2] The School Board rescheduled its consideration of Thombleson's contract nonrenewal for April 30, 1982. Chambers tried unsuccessfully on April 28 and 29 to inform Thombleson of the rescheduling, but was unable to notify him until the morning of April 30, 1982. Chambers explained to Thombleson the consideration date had to be rescheduled because state law required school boards to act by May 1 on all nonrenewals.

Before the April 30 meeting, Thombleson prepared and delivered a request to the School Board which stated, "Since I do not feel like I was given sufficient notice to prepare to present my case to the school board tonight, I request to appear before the board at a latter (sic) date." Record, pp. 318–19. Moreover, Thombleson personally attended the April 30, 1982 executive session and made an oral request for an extension. During the meeting, the School Board President, Gary Walker, told Thombleson that the Board was obligated to act on his contract prior to May 1. With full knowledge of the May 1 deadline, Thombleson requested two or three times that the Board grant him an extension.[3] Although the School Board granted Thombleson's request for more time and took no action on his contract, Walker testified the School Board never intended to extend Thombleson's contract through the next year by granting the extension.

On May 20, 1982, an executive session was called to consider the nonrenewal of Thombleson's contract. Both Thombleson and Chambers presented evidence on whether Thombleson's contract should be nonrenewed, and the School Board ultimately voted in open session to nonrenew Thombleson's nonpermanent teaching contract effective at the end of the 1981–82 school year. The action of the School Board was entered into the official Board minutes for May 20, 1982, and in a letter dated June 28, 1982, Chambers notified Thombleson that his contract had been nonrenewed.

On December 30, 1982, Thombleson filed a complaint in the Greene Circuit Court alleging the decision of the School Board

---

2. *See* I.C. 20–6.1–4–14. This code section provides, in pertinent part:

"Contract Rights of Non-Permanent Teachers. (a) Each contract entered into by a nonpermanent teacher and a school corporation continues in force on the same terms and for the same wages ... for the next school term following the date of termination set in the contract. However, the contract does not continue if:
(1) on or before May 1, the school corporation notifies the teacher that the contract will not continue for the next school term; this notification must be:
(A) written; and
(B) delivered in person, or mailed by registered or certified mail to the teacher at his last and recognized address;

(2) the teacher delivers or mails by registered or certified mail to the school corporation his written resignation; or
(3) the contract is replaced by another contract between the parties."
*Id.*

3. The official School Board minutes memorialized this part of the meeting as follows:

"Michael Thombleson received a letter of termination. Michael Thombleson was at the meeting and requested an extension by the Board. Mr. Walker explained to Mr. Thombleson that the letters had to be presented by May 1, 1982. Mr. Thombleson said he was aware of the date but requested an extension because he had not had enough time."
Record, p. 400.

violated I.C. 20–6.1–4–14. His complaint also alleged that the failure of the School Board to afford him a fair hearing opportunity before it terminated his contract violated the terms of the collective bargaining agreement, and his rights under the due process clause of the Fourteenth Amendment of the Constitution. The trial court held the School Board had acted properly in terminating Thombleson's contract, and entered the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

1. Plaintiff, Michael Thombleson, is a citizen of the State of Indiana and of the United States of America, and is duly licensed and certified by the State of Indiana as a public school teacher.

2. The Defendant, Board of School Trustees of the Central School District of Greene County, Indiana, is the governing body of a public school corporation created pursuant to the laws of the State of Indiana and is authorized by those laws to operate a school system and to employ and discharge teachers.

3. Plaintiff was last employed by the Defendant during the 1981–82 school year as a nonpermanent first year teacher.

4. In a letter dated April 14, 1982, the Defendant informed the Plaintiff that his teaching contract would be considered for nonrenewal on May 20, 1982, at a meeting of the Board of School Trustees.

5. On April 16, 1982, the Plaintiff requested and on April 19, 1982, was given a statement of reason why his contract would be considered for non-renewal.

6. Plaintiff was evaluated in writing by the Defendant's agents on November 24, 1981, March 17, 1981, and April 8, 1982.

7. In the April 14, 1982 letter, the Defendant initially errored (sic) in scheduling the Board's final consideration for May 20, 1982, and thereafter rescheduled the meeting for April 30, 1982.

8. The Defendant's agent, Mr. Paul Chambers, Principal, Central High School, tried unsuccessfully on April 28 and April 29, to inform the Plaintiff of the April 30, 1982 conference, finally giving him personal notice at 10:00 a.m. on April 30, 1982.

9. Prior to the hearing and with the assistance of his counselors, the Plaintiff prepared and delivered a request to appear before the Defendant at a later date.

10. As grounds for his request, Plaintiff listed insufficient prior notice that prevented him from preparing his case.

11. The Plaintiff personally attended the April 30, 1982 executive session and made an oral request to appear at a later date.

12. At the April 30, 1982 executive session, the Plaintiff was advised by the Board President of the Defendant's obligation to act on the contract prior to May 1st.

13. On April 30, 1982, the Defendant was prepared to act on the Plaintiff's contract; the Defendant granted Plaintiff's request; and the Defendant took no action.

14. The Defendant did not intend to extend the Plaintiff's contract through the next school year by granting the Plaintiff's request to be heard at a later date.

15. The Defendant was ignorant of the fact that granting the delay could result in an additional year on the Plaintiff's contract.

16. Plaintiff and his representative personally attended the May 20, 1982 executive session of the Defendant called to consider the Plaintiff's contract.

17. At the May 20, 1982 executive session, the Defendant's high school principal discussed his written summary in support of the noncontinuation of the Plaintiff's contract.

18. At the May 20, 1982 executive session, the Plaintiff, through his representative, argued for the continuation of the Plaintiff's contract.

19. Immediately after the executive session on May 20, 1982, the Defendant met in open session and acted by a majority of the Board to cancel the Plaintiff's non-permanent teaching contract effective at the end of the 1981–82 school year.

20. Plaintiff personally attended the May 20, 1982 public session and was present when the action was taken on his contract.

21. The action of the Defendant on the Plaintiff's contract was entered into the Board minutes for May 20, 1982.

22. The last day of the 1981–82 school year was May 21, 1982.

23. Plaintiff was a member of the bargaining unit represented by the Central Education Association and was covered by the Collective Bargaining Agreement with the Defendant.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject of the cause.

2. The standards for cancellation of non-permanent teaching contracts are specifically provided in I.C. 20–6.1–4–14 and the area is preempted by that legislation to the exclusion of any preconditions established by contract.

3. 'Fair hearing opportunity of' Act (sic) VI, Part B of the Collective Bargaining Agreement is a precondition to the statutory scheme and is void.

4. By the Plaintiff's written request of April 30, 1982, and his actions at the Defendant's executive session on April 30, 1982, the Plaintiff waived his May 1st rights I.C. 20–6.1–4–14(a)(1) and agreed to consideration at a later date.

5. Plaintiff is estopped from using his actions at the executive session April 30, 1982, to defeat the final action of the Board cancelling his non-permanent contract.

6. All of the provisions of I.C. 20–6.1–4–14 have been complied with by the Defendant in cancelling the contract of the Plaintiff."

Record, pp. 236–38.

Thombleson appeals, alleging the following errors in the trial court's decision for review:

1. Whether the fair hearing clause of the collective bargaining agreement is void because it constitutes an impermissible precondition to the statutory scheme in I.C. 10–6.1–4–14 for the cancellation of nonpermanent teachers' contracts.

2. Whether Thombleson waived his rights under I.C. 20–6.1–4–14 to be notified on or before May 1, 1982 of the nonrenewal of his nonpermanent teacher's contract.

3. Whether Thombleson was estopped from challenging the failure of the School Board to notify him on or before May 1, 1982, of the fact that his nonpermanent teacher's contract would not be renewed.

4. Whether the School Board's decision to terminate Thombleson's contract should be set aside because it failed to make sufficient findings of fact.

## DECISION

### Collective Bargaining Provision Void

Thombleson initially challenges the trial court's determination that the "fair hearing opportunity" clause of the collective bargaining agreement is void because it is a condition precedent and contrary to I.C. 20–6.1–4–14, the statutory scheme of the Teacher Tenure Act for dismissal of nonpermanent teachers. He alleges the fair hearing opportunity did not conflict with the Teacher Tenure Act. He also argues the provision is enforceable because the Act specifically permits provisions in collective bargaining agreements which deviate from the Act.

We note that the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state, and it is therefore the duty of the court to adopt that construction of the Act best calculated to protect the public right as against the

individual right. *Gary Teachers Union, Local No. 4 v. School City of Gary* (1975), 165 Ind.App. 314, 332 N.E.2d 256. The Act is the legislative method of balancing job security of teachers with the need of the school system to evaluate the competency and behavior of new teachers. *Id.* In *School City of Lafayette v. Highley* (1938), 213 Ind. 369, 376–77, 12 N.E.2d 927, 930, the Indiana Supreme Court declared the purpose of the Tenure Act to be:

> "to protect the educational interest of the state by the establishment of a uniform system of permanent contracts. It is not its purpose to foster the interests of, or to create special privileges to, any teacher or class of teachers. The policy of the law is to establish a uniform tenure system for all the schools of the state, and must be construed liberally with that aim and end in view."

In light of these policies, our court has held that a provision in a collective bargaining agreement giving teachers tenure after three years of employment was void because it impermissibly conflicted with the Act which provided that a teacher became permanent after five years. *Gary, supra.* The court concluded the Teacher Tenure Act alone controls the discharge of teachers, stating:

> "In addition, a policy of uniformity appears meritorious not merely to deter devisiveness but because it creates an assurance to those entering and engaging in the teaching profession that these assurances will not be altered by the whim of the community if they find it necessary or desirable to move from one community to another."

*Id.* 165 Ind.App. at 319–20, 332 N.E.2d at 259.

In *Brown v. Board of School Trustees of the Nettle Creek Community School Corp.* (1980), Ind.App., 398 N.E.2d 1359, the collective bargaining agreement required written warnings of unsatisfactory performance, which was not required for nonpermanent teachers under the Act. Our court concluded to the extent the rule

purports to take away the device of nonrenewal at the end of a term by setting up a condition precedent, it is contrary to the statutory scheme and thus void.

■ In the case at hand, the bargaining agreement attempted to impose a fair hearing opportunity on nonrenewal decisions for nonpermanent teachers. The Teacher Tenure Act, however, provides different rights to a nonpermanent teacher who is refused continuation.[4] The fair hearing opportunity provision, then, is in violation of the policy of uniformity and creates a special privilege to a class of teachers. Thus, we conclude it is an impermissible condition precedent to the nonrenewal of nonpermanent teachers and is void.

■ Thombleson argues, however, that the fair hearing opportunity clause is saved by virtue of statute enacted in 1978 by the legislature. I.C. 20–6.1–4–14.5 states, "The provisions of this chapter may not be construed to limit the provisions of any collective bargaining agreement negotiated pursuant to I.C. 20–7.5 in effect on or after July 1, 1978." Thombleson reasons that because the collective bargaining agreement in question was in effect after July 1, 1978, the statutory requirements of I.C. 20–6.1–4–14 cannot limit its requirement of a fair hearing opportunity.

We begin by restating that the purpose of the Teacher Tenure Act is to create a uniform system of teacher contracts throughout Indiana. *Miller v. Barton School Township* (1939), 215 Ind. 510, 20 N.E.2d 967; *School City of Lafayette v. Highley, supra; Brown v. Board of Trustees of Nettle Creek, supra; Gary Teachers Union, Local No. 4 v. School City of Gary, supra.* If Thombleson's interpretation were accepted, however, the entire Teacher Tenure Act would be subordinated to the pressures and vicissitudes of each local collective bargaining unit. We do not believe the legislature intended the conflicting provisions of collective bargaining agreements to control over the state's ex-

---

4. See footnote 2, *supra.*

pressed public policy of uniform teacher tenure.

In construing Section 14.5, we rely on the rule of statutory construction utilized by the Indiana Supreme Court in *Evansville-Vanderburgh School Corp. v. Roberts* (1980), 273 Ind. 449, 458, 405 N.E.2d 895, 901 when it stated, "It is well settled that on interpretation of a statute which does not give effect to all of a statute's provisions must be avoided if an interpretation is possible which would give effect to all of the statute's provisions." In order to give effect to all of the Teacher Tenure Act, then, we will construe Section 14.5 as protecting only those collective bargaining agreements which were either in existence on July 1, 1978 or had been bargained by July 1, 1978 but were to go into effect after that date.[5] Because the collective bargaining agreement covering Thombleson was not in existence and had not been bargained by July 1, 1978, Section 14.5 does not save the fair hearing opportunity clause.[6]

*Waiver of Rights*

Thombleson also attacks the trial court's conclusion that he waived his right under I.C. 20–6.1–4–14 to be notified on or before May 1, 1982 of the fact that his nonpermanent teacher's contract would not be renewed. We initially note our standard for review in cases such as this is as follows:

> "The trial court's judgment comes before us in a presumption of correctness, and the appellant has the burden of proving error. When reviewing the findings of a trial court to determine whether they are supported by sufficient evidence, this court does not re-weigh the evidence nor rejudge the credibility of the witnesses. The determination of the trial court will be affirmed unless the evidence viewed in a light most favorable

to the trial court leads uncontrovertibly to a conclusion opposite the one reached."

*Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639, 643. Thombleson alleges the evidence leads uncontrovertibly to the conclusion that he did not know of his right to be notified by May 1, and the only reason he requested a postponement of the April 30 meeting was that he had not been afforded sufficient time to prepare for that meeting.

Waiver has been defined as "the intentional relinquishment of a known right." *Lafayette Car Wash, Inc. v. Boes* (1972), 258 Ind. 498, 501, 282 N.E.2d 837, 839. *See also Salem Community School Corp. v. Richman* (1984), Ind.App., 406 N.E.2d 269. It is an election to forego some advantage that might otherwise have been insisted upon. *City of Evansville v. Follis* (1974), 161 Ind.App. 396, 315 N.E.2d 724. A person may waive a right created by statute if there is full knowledge of the existing right. *Lavengood v. Lavengood* (1947), 225 Ind. 206, 73 N.E.2d 685; *Brown v. State* (1941), 219 Ind. 251, 37 N.E.2d 73.

■ Although Thombleson claims in his brief he was unaware of the May 1 statutory deadline so that his request for a hearing delay was not made with full knowledge of his rights under the Teacher Tenure Act, the record reveals otherwise. Chambers, the school principal, testified he told Thombleson the meeting was rescheduled because state law required nonrenewal decisions to be made by May 1. Moreover, Walker, the School Board president, testified he told Thombleson the Board was obligated to act on his contract prior to May 1. We decline Thombleson's invitation to reweigh the conflicting testimony and

---

5. Our holding is in accord with an earlier Indiana appellate decision, *Anderson Federation of Teachers v. Alexander* (1981), Ind.App., 416 N.E.2d 1327. In *Anderson*, our court refused to allow the teachers union and school corporation to agree to an additional ground for terminating teachers' contracts, in violation of the Teacher Tenure Act. The contract was negotiated and in effect after July 1, 1978, but not on July 1, 1978.

Our court refused to hold that Section 14.5 saved the provision in the agreement, as we hold in the case at hand.

6. Because we decide the fair hearing opportunity clause was inoperable as far as Thombleson's nonrenewal, we need not address the issue of whether the hearing was, in fact, fair.

conclude the evidence does not lead uncontrovertibly to a conclusion opposite of the one reached—that Thombleson knew of the May 1 statutory deadline and waived this right under the Teacher Tenure Act.[7]

*Findings of Fact*

Thombleson's final allegation of error is the School Board failed to make sufficient findings of fact. He claims the School Board's failure to make findings in this case prevented the trial court from adequately reviewing the School Board's decision. We disagree.

The statute under which the School Board cancelled Thombleson's contract does not require written findings. I.C. 20–6.1–4–14. Moreover, school boards are defined as agencies of less than state-wide jurisdiction, and as such, they are not governed by the Administrative Adjudication Act, I.C. 4–22–1–1 to –30. *State ex rel. Newton v. Board of School Trustees of the Metropolitan School District of Wabash County* (1984), Ind.App., 460 N.E.2d 533; *South Bend Community School Corporation v. National Education Association* (1983), Ind.App., 444 N.E.2d 348. Thus, the requirement in I.C. 4–22–1–10 that findings of fact are required in all administrative matters does not apply to school boards.

Our court has, on occasion, reversed a trial court where a claimant has alleged a due process violation and the school board has made inadequate findings. *See, e.g., Newton, supra.* The reason for this is to crystallize the school board's analysis of the evidence in order to provide the court with an opportunity for intelligent review. *Id.* In the case at hand, however, the minutes of the School Board provided a sufficiently concrete analysis of the evidence for intelligent trial court review, and we do not feel compelled to impose the requirements of findings of fact where none are mandated statutorily.

Judgment of the trial court is affirmed.

YOUNG, P.J., and CONOVER, J., concur.

---

**7.** Because we find Thombleson waived his right to be notified by May 1 under the Teacher Tenure Act, we need not consider the estoppel issue raised by Thombleson.