Filed Feb. 6, 1892.

---

### No. 15,511.

### LAMB *v.* LAMB.

HUSBAND AND WIFE.—*Antenuptial Contract Procured by the Husband's Fraud.—Setting Aside.—Husband's Subsequent Conduct.*—An antenuptial agreement which the intended husband by fraud and misrepresentations procures from his intended wife may be set aside at her instance before the marriage is dissolved or he dies; and his misconduct after marriage toward her may be shown for the purpose of showing that her act in bringing the suit was not premature.

From the Floyd Circuit Court.

*C. L. Jewett* and *H. E. Jewett*, for appellant.

*D. C. Anthony*, for appellee.

VOL. 130.—18

ELLIOTT, C. J.—The appellant alleges, in her complaint, that she and the appellee entered into a contract of marriage; that the appellee obtained a controlling influence over her, and secured her confidence; that, well knowing the influence he possessed over her, the appellee falsely represented to her "that, in order to satisfy his grown up sons of the propriety of his marriage to her, and to reconcile them thereto and enable him and her to live in peace after their marriage, it would be necessary for them to execute a paper which would satisfy the defendant's children, but that the paper would not have the effect to deprive her of any of her rights as his wife or as his widow;" that, "notwithstanding such paper to be so executed by them, she would receive more than twenty-three thousand dollars in stocks, moneys and bonds;" that, "in furtherance of his fraudulent design, the defendant represented to the plaintiff that he would take her to a good lawyer in New Albany, who would act for her and advise her in the matter; that the defendant thereby induced her to go to the office of his own attorney and legal adviser, where, in the presence of the defendant, plaintiff was assured that the paper was all right and as represented by the defendant; that relying upon such representations, and not knowing or understanding the legal effect of the paper, but believing that it was only intended to satisfy defendant's children, and without any intention to relinquish her rights, the plaintiff, in ignorance, not only of the legal effect of such paper, but also of the contents thereof, joined the defendant in the execution, in duplicate, of a written instrument," which reads thus: "This agreement, made this 21st day of August, 1884, between Josiah Lamb of the first part, and Jane Lamb of the second, witnesseth, that, whereas, marriage is intended to be had between the parties, and, whereas, the party of the first part is the owner of large real and personal estate, and to the end that distribution of his said estate may now be settled, so far as the party of the second part is concerned, should he die first: Now, there-

fore, in consideration of the payment of the sum of one dollar by the party of the first part to the party of the second part, the receipt whereof is hereby acknowledged, and of the relinquishment by the party of the second part of all her rights, title and interest in and to the estate, real and personal, of the party of the first part allowed by law, the party of the first part hereby agrees to give and does give to the party of the second part to have and hold as her own separate property, absolutely, out of the estate of the party of the first part, should she survive him, the following personal property." The instrument concludes with a description of the personal property. The complaint, after setting forth the agreement we have copied, avers that the property described in the agreement was of the value of two hundred dollars, and that the value of the appellee's personal estate was more than forty thousand dollars; that the parties married and for a time lived and cohabited as husband and wife. The complaint contains many allegations concerning the appellee's conduct and behavior after marriage, but these we regard as at present immaterial, since the immediate question is whether the antenuptial contract is voidable upon the ground of fraud, and the appellee's conduct after marriage does not affect that question. We shall, however, consider the effect of the appellee's conduct subsequent to marriage at another place.

If the only fraud on the part of the appellee was in misrepresenting the legal effect of the written contract, there could be no recovery in this case unless the situation and relationship of the parties are such as to take the case out of the ordinary rule. It is established law that where parties deal at arms-length in respect to ordinary business matters, the false representation of the legal effect of a written instrument will not constitute fraud. But the rule that the false representation of the legal effect of a written instrument will not constitute actionable fraud does not, by any means, apply to all cases; on the contrary, there are very

many cases over which it does not extend. *Townsend* v. *Cowles*, 31 Ala. 428 ; *Peter* v. *Wright*, 6 Ind. 183 ; *Kline* v. *Kline*, 57 Pa. St. 120 ; *Rockafellow* v. *Newcomb*, 57 Ill. 186. The question here is whether the rule extends over a case where parties occupy a relationship such as that which existed between the appellant and the appellee. We think it clear that it does not.

But there was here more than the misrepresentation of the legal effect of an instrument, there was deception, and undue advantage was taken of an ignorant woman by one who had obtained her confidence. There was deception in pretending to take the woman to an attorney who could act as her adviser and protect her interests as his client, but in fact-taking her to the attorney of the defendant, who was under a duty to him, and could not be the confidential adviser of one whose interests were adverse to his. There was undue advantage taken in putting the woman off with property so grossly disproportionate in value to the estate of her intended husband, and in violating the duty the defendant was under to make no untruthful representations. We think it sufficient to quote the statements of authors of good standing, without collecting the cases, for we are satisfied that they correctly state the law. One of these statements is found under the head of " Confidential Relations," and is this : " Undue influence may easily be exercised under the intimate relation created by an engagement to marry. In the case, *e. g.*, of a marriage settlement of the intended wife's property, drawn up by the intended husband, it is the duty of the latter to explain the provisions of the deed in unmistakable terms, and to give due opportunity to the lady for deliberation ; failing which she may on the husband's death, if not before, have the settlement annulled. Again, if a woman give a man land upon a promise of marriage, and he then refuse to marry her and continue to hold the land, this is a fraud for which the law will give the woman proper relief. So, on the other hand, if a man should, after much solicitation and hesitancy, convey land without

adequate pecuniary consideration to a woman who had promised to marry him, and who had thereby gained great influence over him, her refusal to marry him would afford him ground for rescinding the conveyance." 1 Bigelow Fraud, 351. Another statement of the law is: " Owing, moreover, to the confidential relation which subsists between the parties, an antenuptial contract which appears to have been unfairly procured will be set aside." Schouler Domestic Relations, section 183.

The decision in the case of *McNutt* v. *McNutt*, 116 Ind. 545, does not control this case nor is it at all relevant except upon the single question of consideration. In that case no element of fraud on the part of the husband entered into the case as there considered and decided. Here, consideration is not a controlling element, but is a fact to be considered in connection with other facts upon the question of fraud.

We think that the appellant has a right to show the misconduct of the husband after marriage, not for the purpose of showing that the antenuptial contract was procured by fraud—upon that question it exerts no influence whatever— but for the purpose of showing that the act of the wife in bringing suit was not premature.

Judgment reversed.

Filed Feb. 6, 1892.