JOHNSTON *v.* JOHNSTON, EXECUTOR, ET AL.

[No. 19,474. Filed August 20, 1962. Rehearing denied
September 7, 1962. Transfer denied February 26, 1963.]

352

*Frank I. Hamilton* and *Hubert E. Wickens,* both of Greensburg, for appellant.

*James B. Davison,* of Richmond, and *Vance M. Waggoner,* of Rushville, for appellees.

BIERLY, J.—This appeal arises from a Declaratory Judgment adverse to appellant in the Rush Circuit Court.

The decision of the trial court holds that the antenuptial agreement set out in the complaint operates to divest this appellant from any right, title or interest she might otherwise have had in the said decedent's estate. The pertinent portion of the alleged contract reads as follows:

"In consideration of the promise and covenant of the party of the second part as hereinafter set out, the party of the first part does hereby and herewith release, quit claim and forever discharge all rights and interests of whatsoever nature which she may now have or hereafter acquire in the property, real personal or mixed, of the party of the second part, hereby specifically releasing and relinquishing any and all claims which she may have or acquire in the estate of said party of the second part if said party of the second part predeceases her.

"In consideration of the promise and covenant of the party of the first part as set *forther* hereinabove, the party of the second part does hereby and herewith release, quit-claim and forever discharge all rights and interest of whatsoever nature which he may now have or hereafter acquire in the property, real, personal and mixed, of the party of the first part, hereby specifically releasing and relinquishing any and all claims which he may have or acquire in the estate of said party of the first part if said party of the first party predeceases him.

"It is understood and agreed between the parties hereto that each of said parties shall have the power and right to dispose of any or all of their respective property during the existence of the marriage relationship or by will."

It is appellant's position that the judgment is not supported by sufficient evidence, and that the decision is contrary to law, because the uncontroverted evidence "surrounding the making of the alleged agreement supply a classic and complete case of constructive fraud," in that decedent breached an alleged affirmative duty imposed on him by law to fully inform his fiancee of the value, nature, and extent of his property. In addition she argues that undue advantage was taken of her, in that she was put off with property, so grossly disproportionate in value to the estate of her intended husband that equity

should intervene and delcare the contract voidable because such gross disproportion constitutes a basis for constructive fraud.

The facts most favorable to appellees disclose that the appellant and the decedent, G. Edwin Johnston, were married in the town of Tarentum, Pennsylvania on the 20th day of July, 1940. On the day prior to the marriage, this appellant and the said G. Edwin Johnston signed a purported ante-nuptial agreement.

The evidence discloses that decedent's first wife was the sister-in-law of appellant. Appellant had known the decedent for at least thirty-five (35) years before their marriage.

Prior to the marriage, decedent and appellant had kept company for several years. At the time of signing, decedent was sixty-one (61) years old and appellant was fifty-seven (57) years of age. Neither appellant nor decedent had any living children at the time and none were born of this marriage. Decedent had practiced law for many years in Connersville, Indiana, and at the date of marriage was Judge of the Fayette Circuit Court of Fayette County. In addition, he was a stockholder in and a director on the boards of both Union Savings and Loan Association and a bank at Connersville, Indiana. He also owned two small apartment buildings, in one of which he lived, and he was the record title holder of some land just north of Connersville, the acreage of which was undisclosed.

The execution of the ante-nuptial agreement took place at the home of Frances R. Johnston, the sister of decedent. There were four people present at the time, all of whom were related to decedent. Said Frances R. Johnston testified that prior to the sign-

ing, appellant had informed her that a "marriage paper" was being prepared by decedent's attorney. She (the witness) stated that each of the parties had discussed with her the extent of the value of decedent's property. That the instrument was presented to appellant the day before the marriage and the appellant told her that "they were preparing a marriage paper that night."

The document was prepared in duplicate and appellant was given a copy prior to her signing. Frances R. Johnston further testified that she, in fact, observed the appellant reading the said agreement.

The evidence discloses that appellant was fifty-seven (57) years of age at the time and that she had been widowed some twenty years earlier but had never been gainfully employed. There is evidence that in July, 1940, appellant owned a house, costing $4,000.00, stocks and bonds, $7,000.00 in a doctor's building, a warehouse building and two extra lots, "one hundred dollars and the back was a fifty dollar lot." We fail to find any evidence in the record as to the nature and value of decedent's property and interests at the time of the execution of the agreement. We find no evidence in the record to support any inference that decedent actively concealed the nature and extent of his property from appellant, or that appellant evidenced any unwillingness to abide with the terms of the agreement during coverture.

It is well established in this state that by such an agreement the prospective husband may waive his statutory rights in the estate of his intended wife, and she, likewise may, by such agreement waive her statutory rights in his estate. *Shaffer* v. *Matthews* (1881), 77 Ind. 83; *McNutt* v. *McNutt et al.* (1888), 116 Ind. 545, 19 N. E. 115. If such a con-

tract or agrement is fairly and equitably entered into between the parties, it, and not the law, furnishes the measure of their respective rights. Nor will a mistake as to the law, of itself, be sufficient ground on which to set aside such an agreement. But if one of the parties knowingly or fraudulently misrepresents the law or the facts, and thereby gains an unfair advantage over the victim of the misrepresentation, such contract may be set aside. *Lamb* v. *Lamb* (1891), 130 Ind. 273, 30 N. E. 36. Here, there appears nothing to indicate that the ante-nuptial contract was entered into in an unfair or inequitable manner. On the contrary the evidence reflects that appellant was acquainted with the agreement and its contents, read it, and had opportunity to seek independent advice concerning the same. The mere fact that she did not utilize such opportunity does not afford a basis for the claimed constructive fraud. It does not appear that appellant was under any coercion or pressure of any kind to execute said contract or agreement. The simple fact that she was in the home of the sister of the decedent at the time and in the presence of several of his relatives, standing alone, is not sufficient to raise any presumption of undue influence or overreaching the bounds of propriety. There is no evidence, nor inference therefrom so far as we can find, that appellant was in any manner affected by or placed under any compulsion with reference to said agreement by the pressure of said persons.

While it may be fairly said that a confidential relationship exists between a man and a woman contemplating marriage in the immediate future (in this case, the next day), we are not impressed nor has appellant established that the

existence of such relationship, in and of itself, without more involvement, give rise to a presumption of constructive fraud. It may be said that the existence of a confidential relation may create, under appropriate circumstances, a presumption of influence, but such presumption does not rise to a presumption of undue influence unless accompanied by facts and circumstances from which such undue influence may be fairly inferred. *J. M. Robinson, etc., Co.* v. *Stalcup* (1914), 58 Ind. App. 370, 106 N. E. 395; *Jackson et al.* v. *Myers* (1889), 120 Ind. 504, 22 N. E. 90. Fraud may be erected where the facts and circumstances are such as to make it appear that one party occupies a dominant position and has obtained a substantial and unconscionable advantage over the subservient party. In such a case, the burden rests on the dominant party to sustain the transaction and to rebut the inference of fraud. 14 West's Indiana Law Encyclopedia, Frauds, ch. 6, §51, p. 253; *De Ruiter* v. *De Ruiter* (1901), 28 Ind. App. 9, 62 N. E. 100. We are not apprised of any evidence of probative value in the record of this cause tending to raise a permissible inference that this appellant was in a position of subservience in relation to decedent. Nor does appellant contend that any such evidence was introduced. Rather it seems to be the position of appellant that decedent was under an absolute and mandatory legal duty to fully disclose to appellant at the time of or prior to the execution of the agreement, the nature, extent, and value of all his possessions and that his failure so to do, standing alone, renders the ante-nuptial agreement invalid. We find no such doctrine in Indiana. The courts of this state have consistently required some affirmative acts amounting to fraud or circumstances from which an inference of fraud could be deduced. For example in

the *Lamb* v. *Lamb, supra,* case, from which and wherein it appears that the appellant, the intended husband, engaged in actual and active fraud, misrepresentation, and deceit, in furtherance of a fraudulent design, whereby "undue advantage was taken of an ignorant woman," Judge Elliott said that "there was undue advantage taken in putting the woman off with property so *grossly disproportionate* in value to the estate of her intended husband, and in violating the duty the defendant was under to make no *untruthful representations.*" (Our emphasis.) *Lamb* v. *Lamb, supra,* p. 276. As we have already said the record in this case, contains no evidence establishing a "gross disproportion" of the property or interests of the parties in favor of decedent. It does not appear that appellant made any effort to prove the extent and value of the property and interests of the decedent at the time the ante-nuptial agreement was entered into, and appellant advances that she was unable for any reason to make such proof. Nor is there any evidence in the record tending to establish that decedent made any "untruthful misrepresentations" to appellant concerning his property and interests. There is no evidence of deceit or active fraud practiced by decedent.

The appellant, in her argument, adopts the inventoried value of the decedent's estate as the basis of her contention of great disparity in the value of his estate, and the estate of the appellant, at the time of the execution of the agreement. And from such premise, she concludes that the decedent was the "dominant party" and "recipient of advantages" by the agreement.

Appellant does not set forth in her brief a copy of the referred to inventory, or the material substance thereof. She makes reference therein to three exhibits,

viz: Exhibits A, B and C, as being certified copies
of the inventories filed in the estate of the decedent,
and sets forth only the "appraised value" shown by
each inventory. There is here presented no question
as to appraised value of decedent's estate. However,
appellees' treatment of the inventories, is unanswered
and undenied by appellant and, consequently, we
may accept the same as bearing upon appellant's
aforesaid contention of disparity in the values of the
property of the respective parties when the agree-
ment was made.

Appellees aver that the inventories show that most
of the inventoried property of decedent bore "initia-
tion" dates from 1942 through 1953, and mainly
dates of acquisition from 1949 through 1953. It
follows from this disclosure, that appellant's
attempted use of the decedent's estate inventory val-
ues as establishing the extent and property value
of decedent's holdings at the time of execution of
the involved agreement, as the basis for an asserted
disparity in the value of the property and interests
of the parties, and that decedent's property was then
grossly disproportionate to the property and estate
of appellant, is without substantial foundation.
Thus the record is bare of any evidence from which
the court could have reasonably erected a constructive
fraud upon the ground of undue advantage inuring
to decedent by putting appellant off with property
greatly disproportionate to his own.

We find no evidence of probative value in the
record from which a permissible and reasonable in-
ference could be drawn that a substantial and un-
conscionable advantage of appellant was taken by
decedent. Here the contract on its face, viewed in
light of the facts and circumstances surrounding its

execution, afforded the court an inference that the parties intended and desired to retain their respective and separate property as individuals so as to make it possible for each to devise his or her said property to blood relatives. This desire of a man sixty-one (61) years of age and a woman of fifty-seven (57) to dispose of their separate property as they see fit seems to be a very natural and ordinary thing, and does not necessarily lead to the conclusion that their agreement is the fruit of a fraudulent plot by one or the other.

It appears to us, that the record, as we find it, fails to reveal a state of facts and circumstances such as to make it incumbent upon the trial court to declare a constructive or legal fraud on the part of the decedent in the making and entering into of the herein involved agreement with appellant.

Appellant has failed to establish error by the record and the judgment appealed from must be affirmed.

Judgment affirmed.

Kelley, C. J., and Gonas, J., concur.

NOTE.—Reported in 184 N. E. 2d 651.