Richard J. MATUGA, Appellant–
Respondent,

v.

Sharon M. MATUGA, Appellee–
Petitioner.

No. 37A03–9110–CV–322.

Court of Appeals of Indiana,
Third District.

Oct. 5, 1992.

Transfer Denied Dec. 15, 1992.

---

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellant-respondent.

Ronald F. Layer, James M. Kapitan, Sachs and Hess, P.C., Hammond, for appellee-petitioner.

SULLIVAN, Judge.

Richard Matuga brings an interlocutory appeal from a trial court order which, upon petition by Sharon Matuga, invalidated the antenuptial agreement between himself and Sharon. The trial court concluded that the agreement was unconscionable and procured by fraud. Richard challenges this determination, presenting the following issues for our consideration:

I. Whether the trial court erroneously assigned the burden of proof to Richard rather than Sharon;

II. whether the evidence clearly establishes that Sharon entered into the agreement freely, without fraud, duress, or misrepresentation; and

III. whether Sharon is estopped from challenging the validity of the antenuptial agreement?

Because we reverse with respect to Issue II we need not discuss Issue III, nor Issue I except to the extent that it bears upon resolution of Issue II.

Pursuant to Sharon's request, the trial court entered special findings of fact and conclusions of law in its order. When

a party has requested specific findings of fact and conclusions of law under Ind.Trial Rule 52(A), the reviewing court may not utilize any rational legal basis to affirm the decision; rather, the reviewing court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991) 1st Dist. Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan* (1991) 1st Dist.Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. We will not reweigh the evidence or assess witness credibility. *Id.* Moreover, we will construe the findings together liberally in favor of the judgment. *In re Estate of Palamara* (1987) 1st Dist.Ind.App., 513 N.E.2d 1223, 1227.

The trial court made the following relevant findings:

"2. That [after their engagement] and at some time prior to their marriage, Sharon told Richard that in the event anything should happen to her that she would like her daughter April to have the equity in the home to pay for a college education.

3. That Richard indicated that there were certain accounts that he had set up for his nieces as well as income from rental properties that he owned that he wanted to protect as well, and that he would draw up an agreement for that purpose.

4. That Sharon has been employed as a legal secretary since her graduation from high school but that the law firm for which she has been employed for the last seven (7) years does not practice domestic relations law.

5. That Richard graduated from Wisconsin University and from Indiana University School of Law and is licensed to practice in the states of Illinois and Indiana; his practice includes real estate, probate and domestic relations law.

6. That because of Richard's superior education and experience in such matters, as well as the love and trust Sharon had for Richard, Sharon relied upon Richard to be honest and fair in preparing an agreement reflecting their mutual wishes.

7. That on the Monday evening prior to the marriage of Sharon and Richard celebrated on Saturday, May 23, 1987, Richard gave Sharon a copy of the Antenuptial Agreement that he had prepared.

8. That Richard did not furnish her with a copy of the attachment to the Antenuptial Agreement which listed his property and assets. Richard told Sharon that he was working on the property list and that he needed it for insurance purposes, anyway.

9. Sharon thereafter showed the Antenuptial Agreement to her employer (who is her counsel in this case) and was told that it appeared to be a form agreement but that he could not determine the effect of the agreement without lists of the property." Record at 88–89.

The court further found that, on the morning of the day before the wedding, Richard called Sharon and told her to meet him at the office of James Nagy, an attorney and friend of Richard's, to sign the antenuptial contract. Sharon did not have an opportunity to review the contract, which on this occasion included an extensive list of Richard's property. Richard told Sharon to type up a similar list of her property, and to sign the contract, stating that if she did not do so, they would not get married the next day. The property Richard sought to protect included assets other than those he initially mentioned to Sharon. Richard then kept all copies of the agreement.

Among the conclusions reached by the trial court was the following:

"1. The burden of proof that the Antenuptial Agreement was fairly entered into, with Sharon's full knowledge of the extent of the property owned by Richard, rests upon Richard, a burden he has failed to discharge." Record at 90. Placement of the burden of proof in matters such as before us involves concepts which are related to basic fairness of the agreement itself. Therefore, the court's conclusion placing the burden upon Richard will be treated in the context of Issue II, i.e., whether the contract was freely entered into without fraud, duress or misrepresentation.

■ Generally speaking, the party who petitions to invalidate an antenuptial contract bears the burden of establishing, by a preponderance of the evidence, the invalidity. *See In re Palamara, supra,* 513 N.E.2d at 1226. When, however, the other party has a degree of dominance, that party may be required to demonstrate that the agreement is valid, but only if the dominance and its employment has vitiated the free will of the party challenging the agreement and even then, only if the party defending the agreement has obtained a substantial and unconscionable advantage. *See In re Palamara, supra,* 513 N.E.2d at 1230; *Johnston v. Johnston* (1962) 134 Ind. App. 351, 184 N.E.2d 651. There is substantial doubt whether Richard had a relative position of dominance, *vis a vis* Sharon, with regard to preparation of the agreement. Nevertheless, we will assume, without deciding, that because Richard is an attorney he is familiar with such agreements, and that Sharon, though a legal secretary, might not have the same degree of expertise and sophistication concerning the subtle nuances of such contracts. This assumption, however, does not lead us to affirm the trial court's requirement that Richard disprove fraud.

Although the facts indicate the presence of some time constraints and pressures if the agreement was to be finalized before the wedding, those facts do not give rise to any reasonable inference that but for Richard's arguable dominance in the matter and the pressures of time, Sharon would not have signed the agreement. To the contrary, the evidence is undisputed that it was Sharon who, after an on-again/off-again relationship with Richard, demanded a long term marriage commitment. It is also undisputed that it was Sharon who initiated the matter of preparing an antenuptial agreement so that she could protect her then residence for her daughter by a prior marriage. Both parties to the agreement wished to preserve their respective assets and both parties desired to secure the respective assets to themselves. This is precisely what the agreement did. The agreement, which Sharon seeks to invalidate, totally and completely achieved her original desired ends, setting off to each party the assets then held by each of them.

■ Sharon's emphasis is upon the alleged lack of time to "inform herself as to contents and legal effect of the Antenuptial Agreement." Brief of Appellant at 24. As noted, this argument is without merit. Sharon, however, also asserts that in some manner she was unconscionably disadvantaged by an unawareness of the totality and extent of Richard's assets at the time the agreement was executed. In doing so, she acknowledges that there is no absolute duty to disclose the value of all possessions when entering into an antenuptial agreement. *Rose v. Rose* (1988) 1st Dist.Ind. App., 526 N.E.2d 231; *In Re Palamara, supra.* More to the point, however, is the fact that the only such asset to which she alludes is the professional corporation held by Richard and through which he engaged in the practice of law. Sharon cannot, with any degree of seriousness, maintain that she did not know of the professional corporation. Sharon was in fact employed by that corporation. We summarily reject this disingenuous argument.

By reason of the foregoing, we hold, as a matter of law, that the agreement was fairly entered into with full knowledge on the part of Sharon as to its legal effect and that such legal effect achieved precisely the result she sought. The trial court erro-

neously determined the Antenuptial Agreement to be null and void.

The interlocutory order appealed is hereby reversed and set aside. The cause is remanded for further proceedings not inconsistent with this decision.

GARRARD, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion. Fraud has never been tolerated by the law in any form, yet the Majority has given its blessings to fraud in this case because the agreement apparently "... achieved her original desired ends." At p. 141. Even if this were true, it does not excuse validating an agreement draped in fraud. There is no evidence that her original desired ends were the same desired ends that she had in mind when she signed the agreement under extreme pressure, unrepresented by legal counsel in the office of Richard's fellow attorney and friend James Nagy. She was told that there would be no marriage tomorrow if she did not sign the agreement. After she signed the agreement, Richard kept all the copies. Sharon is a high school graduate. She was not represented by legal counsel. *Matter of Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1230.

Sharon testified that she did not fully understand the extent of the corporation's interest in her home (an understanding no doubt bolstered when she wrote an interest check to Richard, who tore it up saying "Don't be silly, we're married now." Record, p. 204.) Furthermore, the majority summarily disregards Sharon's argument that she was unaware of the corporation's assets. I find equally incredulous the suggestion that every secretary employed by a professional corporation is familiar with its financial structure merely by virtue of his or her employment with the corporation. The majority imputes this knowledge to Sharon, apparently disbelieving her testimony that she was unaware of the corporation's extensive holdings (including the mortgage on her house). Record, pp. 230–35. Later, Richard instituted a foreclosure action on Sharon's house.

My specific reasons for dissenting are:

1. The Majority has completely ignored the trial court's findings of fact. An Ind.Trial Rule 52(A) motion was made and complied with by the trial court. T.R. 52(A) has been abolished by the Majority and rendered meaningless.

2. By ignoring the findings of fact, the Majority has re-weighed the evidence and substituted its own judgment for that of the trial court.

3. The Majority has abandoned the standard of review on appeal which the parties and the trial court are entitled to rely upon.

4. There is ample evidence in the record to support the findings and judgment of the trial court. Under the proper standard of review this Court is bound to apply, the trial court should be affirmed.

The trial court concluded from its findings of fact that:

2. Richard has failed to prove that the Antenuptial Agreement was entered into freely, without fraud, duress and misrepresentation and that it was not unconscionable under the circumstances.

3. The process by which Richard procured the Antenuptial Agreement was unconscionable.

4. Richard fraudulently procured Sharon's signature on the Antenuptial Agreement by not disclosing the extent of the property and assets he sought to protect through the agreement and not affording her adequate time to read the document and seek full counsel and advice.

What were the findings of fact that supported these conclusions of the trial court? These are the findings:

4. That Sharon has been employed as a legal secretary since her graduation from high school but that the law firm for which she has been em-

ployed for the last seven (7) years does not practice domestic relations law.

5. That Richard graduated from Wisconsin University and from Indiana University School of Law and is licensed to practice in the states of Illinois and Indiana; his practice includes real estate, probate and domestic relations law.

6. That because of Richard's superior education and experience in such matters, as well as the love and trust Sharon had for Richard, Sharon relied upon Richard to be honest and fair in preparing an agreement reflecting their mutual wishes.

7. That on the Monday evening prior to the marriage of Sharon and Richard celebrated on Saturday, May 23, 1987, Richard gave Sharon a copy of the Antenuptial Agreement that he had prepared.

8. That Richard did not furnish her with a copy of the attachment to the Antenuptial Agreement which listed his property and assets. Richard told Sharon that he was working on the property list and that he needed it for insurance purposes, anyway.

9. Sharon thereafter showed the Antenuptial Agreement to her employer (who is her counsel in this case) and was told that it appeared to be a form agreement but that he could not determine the effect of the agreement without lists of the property.

The Majority has not applied the standard of review which requires that we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. We will not reweigh the evidence or assess witness credibility. *Id.* Moreover, we will construe the findings together liberally in favor of the judgment. *Matter of Palamara,* supra, at 1227.

The Majority pays lip service to this standard of review but fails to follow it. The judgment of the trial court is not clearly erroneous. I would affirm the judgment of the trial court.