Boyce Brown WOMACK, Appellant,

v.

Anna WOMACK, Appellee.

No. 47S01–9310–CV–1137.

Supreme Court of Indiana.

Oct. 20, 1993.

David P. Allen, Allen, Allen & Allen, Salem, Donald M. Frey, Seymour, for appellant Boyce Brown Womack.

Brent E. Steele, Steele, Steele & Steele, Bedford, for appellee Anna Womack.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

Boyce Brown Womack (Petitioner–Appellant below) ("Husband") seeks transfer after the Court of Appeals affirmed the trial court's decision awarding property to Anna Womack (Respondent–Appellee below) ("Wife"). *Womack v. Womack* (1992), Ind. App., 605 N.E.2d 221. The dispositive issue is whether Indiana continues to recognize the common law presumption of undue influence in transactions between spouses. We hold that the Court of Appeals correctly answered this question—it does not.

The facts relative to this appeal follow. Husband, age 85 at trial, and Wife, age 78 at trial, married on January 29, 1988.[1] Husband and Wife executed an agreement entitled "Pre–Nuptial Agreement" on February 8, 1988. This agreement provided, generally, that (1) each would maintain exclusive ownership and control of property owned before the marriage, (2) Husband would "provide the reasonable, necessary expenses of support and maintenance of the Wife in a suitable home consistent with his financial ability," and (3) each may "in his sole discretion make additional provision for the other whether by lifetime gift, by future Will or Codicil, by joint or community property, by insurance or otherwise."

During the marriage, the two divided their time between the Husband's house on his farm in Washington County and Wife's mobile home in Bedford. Husband bought a house in Salem for them, but the house was sold after they decided it was too small. Additionally, Husband sold two farms he had owned before the marriage began. In the summer of 1990, Husband's health began to deteriorate, and the family was informed that Husband had likely suffered a stroke. Additionally, during this time, Husband's pacemaker was replaced and he experienced kidney trouble.

Meanwhile, Wife continued to look for a marital residence. Wife viewed a house on approximately seven acres in Mitchell, Indiana, ("Mitchell property") and decided it was the house she wanted. Wife asked the realtor to speak with Husband about the property. When the realtor met with Husband, at the mobile home, Husband indicated that there was no reason for him

---

1. At trial, both Husband and Wife were confused as to the actual year of the marriage and, in fact, the petition for dissolution incorrectly stated the year as 1987. The trial court, however, determined the actual year of marriage as 1988 after viewing the marriage certificate.

to view the house because it was to be Wife's house and that it was to be in her name. After making a $500 down payment with her own money on the Mitchell property, Wife was unsuccessful in securing financing to complete the purchase. Consequently, Husband, Wife, and Wife's granddaughter went to the bank in Salem to arrange financing. After pledging a $68,-000 certificate of deposit as collateral, Husband secured the financing for the property by signing a two-year note. On September 14, 1990, Husband and Wife closed on the Mitchell property and the deed to the property was placed in Wife's name alone. At this time, Husband personally executed the loan and obtained the cashier's check for the purchase price.

In October of 1990, Husband filed a petition to dissolve the marriage. At trial, ownership of the Mitchell property was at issue. The trial court determined that Husband, within the terms of the Pre-Nuptial Agreement, had made a gift to Wife of the property. There being no evidence of deception or undue influence surrounding the transaction, the court awarded the Mitchell property to Wife.

Husband appealed. In affirming the trial court, the Court of Appeals determined that the evidence supported the trial court's determination that a gift was completed, that Husband failed to prove that Wife exercised undue influence over Husband in the Mitchell property transaction, and that Husband was competent to make a gift. The Court of Appeals rejected the presumption of undue influence in transactions between spouses and rejected the belief that the marital relationship itself justified a presumption of undue influence. 605 N.E.2d 221, 225. Rather, the Court of Appeals recognized that contemporary law strives to place spouses on equal footing and recognized that at common law the expectations and beliefs surrounding spouses were greatly different. *Id.*

In his petition to transfer, Husband asserts that the Court of Appeals decision contradicts prior precedent by failing to recognize the presumption of undue influence in a transaction between spouses.

Husband argues that upon showing the existence of a confidential relationship, and a dominant party who profits from a transaction between the two, the presumption of undue influence arises and the burden of proof then shifts to the dominant party to rebut the presumption by clear and convincing evidence. Husband asserts that he met his burden and that Wife failed to meet hers.

In view of our decision in *Estate of Banko* (1993), Ind., 622 N.E.2d 476, we now grant transfer. Under the common law, a presumption of undue influence arose in transactions between parties with certain relationships and, as a result of the presumption, the burden of proof shifted to the party who benefitted from the transaction to establish the integrity of the transaction. *Id.* at 480. In *Banko*, we held that *Ind. Code* § 32–4–1.5–4(a) creates the presumption that a survivor to a joint account is the intended receiver of the account proceeds regardless of the relationship between the parties and that this presumption replaces the common law presumption of undue influence. As a result, the party challenging the survivor's right to the proceeds of the joint account must show by clear and convincing evidence that the decedent did not intend the survivor to receive the proceeds of the account without the benefit of a presumption of undue influence.

Because we believe the presumption of undue influence is an antiquated rule of law, we extend the principle of *Banko* to this case and hold that the law no longer recognizes a presumption of undue influence in a transaction between spouses based on the confidential relationship of husband and wife and a showing that the dominant spouse benefitted from the transaction. Rather, the burden of proof remains with the spouse seeking to set aside the transaction to establish that the other spouse exercised undue influence. Having determined that the spouse attempting to set aside a transaction between the spouses bears the burden of proof to establish undue influence by the other spouse, we ex-

amine whether Husband established that Wife exerted undue influence over him.

The trial court held that the suggestion that Wife obtained title to the Mitchell property with Husband's money by deception or improper means "finds no support in the evidence." Further, the trial court found that "[t]here is simply no evidence of any deception or undue influence." Evidence at trial established that the realtor, an uninterested party in the transaction, discussed the purchase of the Mitchell property with Husband and at that time the Husband stated that the house was to be Wife's and that it was unnecessary for his name to be on the title. Although Husband testified that he expected repayment of the purchase price from Wife, the evidence established that he did not require Wife to sign any written document evidencing the debt as he had done when his children borrowed money from him, that he personally executed the note securing the purchase of the property, and that he obtained the cashier's check for the purchase price balance. Additionally, Husband testified during cross-examination, "[n]o one pressured me" into the transaction.

In determining whether the findings of fact are clearly erroneous, an appellate court will not reweigh the evidence or determine the credibility of witnesses, but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. *Lawyers Title Insurance Corp. v. Pokraka* (1992), Ind., 595 N.E.2d 244, 247. Only where the record contains no facts or inferences supporting the trial court's findings are the findings clearly erroneous. *Id.* When the record contains uncontradicted evidence which supports the conflicting inferences, the inferences drawn by the trial court will prevail. *Id.*

We have reviewed the relevant portions of the record and conclude that the trial court's decision is not clearly against the logic and effect of the facts before the trial court. Although in some instances the evidence is conflicting or could support different inferences, it is for the trial court to resolve those conflicts and draw the inferences. We find no error.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, and affirm the trial court.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result.