Janet Irene **PARR**, Appellant–Petitioner,

v.

Gaylord R. **PARR**, Appellee–Respondent.

No. 17A05–9304–CV–146.

Court of Appeals of Indiana,
Fifth District.

June 16, 1994.

Latriealle Wheat, Allen R. Stout, Wheat and Stout, Angola, for appellant.

Neil F. Sandler, Brian J. T'Kindt, Donald K. Broad, Beckman, Lawson, Sandler Snyder & Federoff, Syracuse, for appellee.

BARTEAU, Judge.

Janet Parr (Wife) appeals from the trial court's judgment finding valid an antenuptial agreement entered into between herself and her husband, Gaylord Parr (Husband). Wife presents three issues:

1. Whether Finding No. 15 is supported by the evidence;

2. Whether the trial court erroneously placed the burden of proof on Wife to prove the existence of a confidential relationship and undue influence;

3. Whether the disclosure of assets was sufficient.

We reverse and remand.

### FACTS

The relationship between Wife and Husband spans almost thirty years. Both high

school graduates, they were first married in 1963 when Husband was 22 years old and Wife 21 years old. Their union produced three children, all now emancipated. In 1975 the Parrs dissolved their marriage. By agreement, Husband received custody of their two sons and Wife received custody of their daughter. Wife also received a cash settlement of $40,000, a car and some furniture as her share of the marital estate, which Husband now estimates to have had a value of approximately $500,000. Despite the dissolution of marriage, for the most part Wife and Husband continued to reside together much as they had when married. In 1980, Wife moved out of the house with her daughter. A year later, she retained the services of an attorney and filed a petition to modify the dissolution decree requesting custody of her two sons and an increase in child support. Shortly thereafter, Wife and Husband remarried, but not before executing the ante-nuptial agreement at issue here. The agreement essentially provided that in the event of dissolution of the marriage, Wife's share of the marital estate would be limited to $5000.00 for each year they were married.[1]

### STANDARD OF REVIEW

■■■ The trial court entered specific findings of fact and conclusions of law, as requested by Husband pursuant to Indiana Trial Rule 52(A). When a party has requested specific findings of fact and conclusions of law under T.R. 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact

and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

### FINDING NO. 15

Finding No. 15 reads:

15. That on July 24, 1981, Petitioner Janet Irene Parr and Respondent Gaylord R. Parr both appeared together in person at attorney Alfred R. Gutstein's office in Angola, Indiana and *they* requested that he draft an ante-nuptial agreement *for them* ...

(Emphasis added).

Wife argues that this finding is not supported by the evidence because attorney Gutstein was representing Husband and Husband requested that Gutstein draft the agreement. Wife attempts to negate her presence at the meeting and acquiescence in the agreement by embarking on an argument that Gutstein's behavior violated Ind. Professional Conduct Rule 4.2, which reads:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, *unless the lawyer has the consent of the other lawyer or is authorized by law to do so.*

(Emphasis added).

■■■ We fail to see the correlation between Gutstein's behavior, whether ethical or unethical, and the validity of Finding No. 15. The evidence is uncontradicted that Husband called Gutstein and asked him to prepare the agreement and that shortly thereafter Hus-

---

1. The agreement also provided that Wife would receive a one-third interest in Husband's estate should he die. While this provision on its face appears to be of benefit to Wife, in reality the benefit was illusory because at that time a surviv-

ing spouse who elected to take against the will was entitled to one-third of the net personal and real estate by law. Ind.Code 29–1–3–1. That percentage has now been raised to one-half of the net personal and real estate.

band and Wife arrived at Gutstein's office, where they waited until the agreement was completed. Both discussed the agreement with Gutstein and indicated a willingness to sign immediately. Even though Wife did not overtly ask Gutstein to prepare the agreement for her and Husband, her behavior indicated her acquiescence in the proceedings. We do not find the language of Finding No. 15 to be contrary to what actually occurred. It is not artfully drafted, but it is supported by the evidence.

■ While alleged violations of the Ind. Professional Conduct Rules are not to be taken lightly, they are matters appropriate for referral to the disciplinary commission or the bringing of a legal malpractice action. They are not a catchall method of attacking judgments. Any unethical behavior on Gutstein's part goes to the question of whether Wife entered the agreement knowingly and voluntarily, of her own free will, without being subject to fraud, misrepresentation or undue influence, and after a full disclosure of the assets she was waiving.

### UNDUE INFLUENCE & CONFIDENTIAL RELATIONSHIPS

■ Wife contends that the trial court erred by denying her the presumption of undue influence to which she was entitled. Under the common law, certain relationships gave rise to a presumption of undue influence, among them the relationship of husband and wife and those contemplating marriage. As stated by Judge Hoffman in *Blaising v. Mills* (1978), 176 Ind.App. 141, 374 N.E.2d 1166:

> A confidential relationship exists between a man and a woman contemplating marriage in the immediate future. The same sort of confidential relationship exists between a man and a woman, separated or recently divorced, who are contemplating a marital reconciliation. When such a confidential relationship is accompanied by facts and circumstances from which undue influence may be fairly inferred, a presumption of undue influence is created.

*Id.* at 147, 374 N.E.2d at 1170 (citation omitted).

■ If a party demonstrated the existence of a confidential relationship, and a transaction between the parties resulted in an advantage to the dominant party, then a presumption of undue influence arose. The burden then fell on the dominant party to demonstrate the arms length nature and validity of the transaction. *Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163.

■ Wife presents a convincing argument as to why she was entitled to a presumption of undue influence under the old common law rule. She easily demonstrates the existence of a confidential relationship and an advantage gained by the dominant party. However, that presumption no longer exists. *Womack v. Womack* (1993), Ind., 622 N.E.2d 481. Our supreme court recently eliminated the presumption calling it an antiquated concept. *Id.* When attempting to set aside a transaction based on a claim of undue influence, the burden of proof now falls on the spouse making the claim. *Id.* at 483. Thus, any failure on the part of the trial court to place on Husband the burden of rebutting a claim of undue influence is not reversible error.

■ The trial court found that "there was no duress or undue influence exerted upon Petitioner Janet Irene Parr when she entered the July 24, 1981, ante-nuptial agreement because the evidence does not establish that she was deprived of her own free will in entering the contract and that it was substituted by the will of Respondent Gaylord R. Parr." The finding is reflective of the evidence. In order to amount to undue influence, a superior party's dominance must have vitiated the subordinate party's free will and resulted in an unconscionable advantage to the superior party. *Matuga v. Matuga* (1992), Ind.App., 600 N.E.2d 138. Aside from the obvious dominance of Husband in all matters, there was no claim that Wife acted against her will in signing the agreement. She had finally moved out of Husband's home and was living on her own. She had retained an attorney to pursue a modification of custody and support action. She came to attorney Gutstein's office freely and voluntarily and likewise signed the agreement. Absent the benefit of the presumption

of undue influence, Wife could not sustain the burden of proof on this issue.

### DISCLOSURE OF ASSETS

Wife's final argument is that the evidence failed to prove a sufficient disclosure of assets and liabilities to permit enforcement of the antenuptial agreement. The trial court found:

> 4. That during the entire time of the relationship between Petitioner Janet Irene Parr and Respondent Gaylord R. Parr from the beginning of their first marriage in 1963 through the present she did not inquire about or show particular interest in his business and financial matters nor learn much about them nor did he disclose much information to her about his business and financial matters as far as her awareness about them is concerned.
>
> 5. That over the period of time from the beginning of the first marriage of Petitioner Janet Irene Parr and Respondent Gaylord R. Parr in 1963 to the present he accumulated a rather large amount of assets by virtue of his operation of various business enterprises owned by him including a large farming business, a trucking business, and a farm supply business, all in which she was not involved or active in any significant way.

Wife was unfamiliar with Husband's business and financial affairs. The antenuptial contract contained no listing of Husband's property or assets. The only disclosure which occurred took place in attorney Gutstein's office immediately preceding the execution of the agreement. It consisted of a three to four minute conversation between Husband and Wife, but no specifics are remembered with the exception that Gutstein recalled hearing Husband describe some land he owned by the names of those who farmed the land. Husband never disclosed the value of his assets.

Husband counters that the disclosure provided was adequate, and even if it was not, there is no duty to disclose. He cites *Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, and *Rose v. Rose* (1988), Ind.App., 526 N.E.2d 231, in support.

In *Palamara*, Wife was an executive secretary studying to be an accountant and Husband was chief executive officer of Anacomp, Inc. They entered an antenuptial agreement and married knowing Husband was terminally ill. Husband provided Wife with an asset summary, she met with Husband's attorney and personal secretary for a lengthy period of time to go over the assets and antenuptial agreement and was given an opportunity to have the agreement reviewed by her own attorney. She argued that the method used by Husband to present his assets misrepresented their true value. The trial court found that there was full disclosure of possessions.

The First District of this court, in discussing an alternate holding by the trial court, emphasized that "there is no absolute and mandatory duty imposed upon spouses contemplating marriage to fully disclose the *value* of all possessions." *Id.* at 1228. It was also reiterated that the failure to completely disclose the value of property is insufficient, standing alone, to invalidate an antenuptial agreement. *Id.* at 1228. The decision of the trial court upholding the agreement was affirmed.

In *Rose*, 526 N.E.2d 231, also decided by our First District, Wife alleged that Husband failed to fully disclose his assets and failed to ascertain whether Wife fully understood the antenuptial agreement entered into by the parties. Husband owned a drywall business, which Wife had visited on occasion, the real estate upon which the marital residence was built, a farm, a Corvette and a trailer. Wife owned a car and some furniture and was a licensed beautician. The parties had lived together for approximately one year and had both been previously married and divorced. Upon execution of the agreement, which presumably did not contain a listing of assets or values, Husband told Wife she was giving up "a lot."

The First District, in upholding the validity of the antenuptial agreement, cited the language in *Palamara* to the effect that no absolute duty exists to disclose the value of all possessions upon entering into an antenuptial agreement.

In a case of a like nature, the Third District of this Court overturned a decision of the trial court invalidating an antenuptial agreement. *Matuga*, 600 N.E.2d 138. Wife was a legal secretary and Husband a lawyer. Husband prepared the agreement and provided it to Wife but did not provide her with a list of property. Wife had her own attorney review the agreement. The attorney informed her he could not determine the agreement's effect without the list of property. At the execution of the agreement, Husband provided Wife with an extensive list of assets. Wife argued that she had insufficient time to inform herself of the effect of the agreement after having been provided with a listing of Husband's assets. In holding the agreement valid, the Third District cited *Palamara*, as well as the fact that the only asset of which Wife claimed ignorance was Husband's professional corporation, through which he practiced law and through which she was employed.

Rather than merely affirming the practice of not disclosing assets prior to execution of an antenuptial agreement, these cases instead look at the individuals involved and the circumstances surrounding the execution of the agreement in order to determine the validity of the agreement. Such a practice is in accord with the law of waiver.

The concept of waiver appears in both civil and criminal law. A recurrent theme that accompanies discussions of waiver is the necessity that, in order for a waiver to be valid, it must be made knowingly, freely and voluntarily. *Woodson v. State* (1986), Ind., 501 N.E.2d 409 (waiver of the right to a jury trial must be made knowingly, intelligently, and voluntarily); *Gentry v. State* (1984), Ind., 471 N.E.2d 263 (prosecution has the burden to prove beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights and that the defendant's confession was voluntarily given); *Nacoff v. State* (1971), 256 Ind. 97, 267 N.E.2d 165 (*Miranda* rights may be waived but waiver must be free and voluntary, and not induced by any threats, promises, or other improper influences); *Lavengood v. Lavengood* (1947), 225 Ind. 206, 73 N.E.2d 685 (waiver contemplates something done designedly or knowingly which modifies or changes existing rights and presupposes full knowledge of a right existing and an intentional surrender and relinquishment of that right); *Egnatz v. Medical Protective Co.* (1991), Ind.App., 581 N.E.2d 438 (waiver is an intentional relinquishment of known right and is a voluntary act); *Nichols v. State* (1989), Ind.App., 542 N.E.2d 572 (before confession may be admitted into evidence at trial, the state must establish beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights to an attorney and not to incriminate himself); *Salem Community School Corporation v. Richman* (1980), Ind. App., 406 N.E.2d 269 (waiver is an intentional relinquishment of a known right, an election by one to forego some advantage he might have insisted upon); Ind.Code 29–1–3–6(a) (the right of election of a surviving spouse may be waived before or after marriage by a written agreement, after full disclosure of the nature and extent of such right).

■ We find the same requirement applicable to an antenuptial agreement. *In re Marriage of Boren* (1985), Ind., 475 N.E.2d 690. In order for a waiver of interest to be valid, the waiver must have been made knowingly, voluntarily and intelligently. Essential to a knowing, voluntary and intelligent decision to waive rights and property in exchange for marriage is knowledge of the extent of the rights and property being waived. In other words, there must be full disclosure and understanding of the nature and consequences of the agreement prior to its execution.

How much or how little disclosure is necessary to adequately convey to the waiving party the essence of what they are giving up is a fact sensitive inquiry. Some factors which should be considered are the intelligence and educational levels of the parties, the prior experience and expectations of the parties, the nature and extent of business interests involved, each party's existing familiarity with the other's business and personal assets and the relative bargaining power of each party. For example, if Wife were a certified public accountant who handled all of Husband's business and financial affairs,

an agreement entered into with no formal disclosure of assets would likely be upheld because of Wife's extensive knowledge acquired through her position as Husband's accountant. Conversely, anything less than full disclosure would likely invalidate an agreement between a college educated Husband and a Wife who was an immigrant with limited language skills on the verge of deportation.

In the case before us, neither Wife nor Husband have any formal education beyond high school. Expert testimony established that Wife was "low average intelligence." In contrast, Husband displayed great skill and savvy in accumulating a multi-million dollar business empire. Wife had no business experience with the exception of a brief stint working in a nursing home at a minimum wage job. Husband's fortune was acquired through various business activities, including farming, trucking and fertilizer sales.

Husband was without question the dominant party. Husband had always controlled the money, intentionally keeping Wife ignorant of the assets and liabilities. Husband accumulated between two million and three and one-half million dollars—yet always told Wife they were broke. Husband made all the decisions for the two of them. He decided they would get divorced the first time and selected Wife's attorney, who incidentally had represented Husband for some time prior to representing Wife in the dissolution.[2] Husband decided they would resume their relationship without benefit of marriage. He decided Wife's good points outweighed her bad and they would remarry. He decided they would enter an antenuptial agreement. He selected the attorney and dictated the terms. Even though he was aware that Wife had her own attorney, Wife's attorney was not consulted prior to preparation and execution of the agreement. During the many phases of their relationship, the same pattern always emerged—Wife did what Husband told her to do.

Husband freely acknowledged Wife's ignorance concerning his businesses, that she had never been privy to any of his financial dealings and that he never told her the value of his assets.

■ Given the diversity of Husband's holdings in combination with Wife's low-average intelligence, her unfamiliarity concerning business matters and her tendency to trust Husband to act in her best interest and make decisions for her, whatever discussion took place in the 3–4 minute conversation in attorney Gutstein's office could not have adequately informed Wife of the potential interest in property she would be relinquishing. When a party is asked to waive an interest in property, without being advised of the extent and nature of the property possessed, the waiver of the interest cannot be said to have been knowingly, voluntarily, and intelligently made.

It is at this juncture in Wife's argument that the allegations of professional misconduct involving attorney Gutstein play a factor. Wife's attorney knew that an antenuptial agreement was contemplated, had discussed it with Gutstein, and asked for a draft so that it could be reviewed with her client. However, Wife's attorney was never provided a copy of the agreement and it was executed without Wife's attorney's knowledge. The exclusion of Wife's attorney in the preparation and execution of the document lends credence to Wife's argument that her waiver of any interest in Husband's property was less than knowingly, voluntarily and intelligently obtained. Had Wife's attorney been given the opportunity to review the agreement, it would have weighed strongly in favor of the validity of the waiver. Instead, because the agreement was signed in isolation, it has the opposite effect.

Ideally, Wife should have been provided with a complete written itemization of all of Husband's holdings and her attorney should have been included in the discussions and negotiations prior to execution of the agreement. At a very minimum, Wife should have been informed of the value of the interest she was waiving. Instead, Husband cursorily

---

**2.** Husband and Wife sought to have Husband's attorney represent both of them in the dissolution. Upon learning this might present an ethical dilemma, Husband decided Wife would be represented by his attorney of some time and he would seek other representation.

told her of some of his holdings in the minutes before the agreement was signed. As a matter of law, given the facts as found by the trial court, Wife could not have knowingly, voluntarily and intelligently waived her rights in the marital estate without a more complete disclosure. Thus, the agreement is invalid.

This cause is reversed and remanded to the trial court for proceedings consistent with this opinion.

SHARPNACK, C.J., concurs.

KIRSCH, J., concurs in part and dissents in part with opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I concur with the majority's resolution of issues one and two. I concur also with the majority's statement of the law relative to issue three, but I respectfully dissent from its application.

The majority correctly states that the extent of disclosure "necessary to adequately convey to the waiving party the essence of what they are giving up is a fact sensitive inquiry" and that a number of factors should be considered, including intelligence and educational levels, prior experience, the parties' expectations, the extent of the business interest involved, the party's familiarity with the others' assets and relative bargaining power. The majority then reviews the evidence and concludes, "As a matter of law, given the undisputed facts on this issue, Wife could not have freely, voluntarily and intelligently waived her rights in the marital estate without a more complete disclosure."

I do not agree that the facts relevant to this issue are undisputed. Husband and Wife had lived together for seventeen of the eighteen years preceding the execution of the antenuptial agreement here at issue; they had gone through a prior dissolution proceeding; Husband's business was located one hundred yards from the house in which the parties resided; Wife had on occasion worked in Husband's business and had access to Husband's financial records; Wife had at least some knowledge of the nature and extent of Husband's farming operations;

Wife had at least some knowledge of Husband's personal property, including vehicles, farm equipment and airplane; finally, at least some information was disclosed to Wife immediately prior to signing the agreement at issue.

In the presence of the foregoing facts, which are also undisputed, it cannot be said as a matter of law that Wife did not have sufficient information to make an informed decision regarding waiver. By doing so, the majority impermissibly weighs the conflicting evidence and invades the province reserved to the trial court.

This cause should be remanded to the trial court for determination of whether under the facts of this case Wife had sufficient information to make a knowing and voluntary waiver of her interest.